LAVERY et al. v. MID-CONTINENT OIL DEVELOPMENT CO.

No. 6282—Opinion Filed Jan. 16, 1917.

(162 Pac. 737.)

**Oil and Gas—Leases—Contract.**

Where a drilling contract by the terms of which an oil company, in consideration of the assignment to it of a one-half interest in an oil and gas lease, specifically undertook to commence and with diligence drill a well on the premises into a designated sand, contained a clause providing that the failure to commence and complete such well should work a forfeiture and render the contract null and void, held, that such provision was for the benefit of the owner of the leasehold interest, and gave to him alone the option to declare a forfeiture upon failure of the company to discharge its obligation to drill, and that the company could not by virtue of such forfeiture clause, without the consent of such owner, terminate the contract by its own default, and thus escape liability for resultant damages.

(Syllabus by Bleakmore, C.)

Error from District Court, Okmulgee County; Wade S. Stanfield, Judge.

Action by G. W. Lavery and others against the Mid Continent Oil Development Company, a corporation. Judgment for defendant, and plaintiffs bring error. Reversed and remanded.

Merwine, Newhouse & Albertson and Lex V. Deckard, for plaintiffs in error.

Belford & Hiatt, for defendant in error.

Opinion by BLEAKMORE, C. This action was commenced in the district court of Okmulgee county, to recover damages alleged to have been occasioned by the failure to sink a test well pursuant to the terms of an oil and gas drilling contract. The parties appear and are referred to here as in the trial court.

Plaintiffs were the owners of an oil and gas mining lease covering 13 1-3 acres of land in Okmulgee county, and on August 10, 1912, entered into a written agreement by the terms of which, in consideration of the drilling of a test well on the premises by defendant, plaintiffs undertook to assign an undivided one-half interest in and to said lease, defendant agreeing within three days thereafter to commence the moving of rig timbers and necessary equipment on the premises for the erection and completion of the same and the drilling of a well with due diligence into a designated sand.

The contract provided that the expense of drilling such well should be borne by defendant; that if oil or gas was found in paying quantities plaintiffs should pay out of the first production thereof one-half of the cost of casing, tubing, rods, lead lines, and other equipment used in operating the well, and should thereupon become the owners of an undivided one-half interest in the derrick, bull wheels, etc. The contract contained no surrender clause. It was also provided therein:

"The failure to begin operations as above set forth on the above-described premises, within the time provided in this contract, and to continue the same with due diligence to completion, shall work a forfeiture of the assignment of the interest in said leasehold premises herein agreed upon, and shall cause the same to be null and void and of no further force or effect whatsoever."

At the time of the making and delivering of said contract plaintiffs executed an assignment of an undivided one-half interest in said oil and gas lease, which together with the contract, was placed in an envelope and deposited in a bank, there being indorsed upon such envelope the following:

"Escrow agreement between Charles E. Martin, Mid-Continent Oil Company, and G. W. Lavery et al. This assignment to be taken down to Charles E. Martin, of the Mid-Continent Oil Development Company, when he has completed a well on the east 13 1-3 acres of the northwest quarter of the northwest quarter of section 24—14 north, range 12

east, known as the Peggy Berryhill allot-
ment."

Pursuant to the contract, a derrick was
erected on the premises, about the time of
the completion of which a well on an ad-
joining tract some 200 feet from the line of
the lease in question was shown to be dry,
and defendant thereupon refused to sink a
well on the lands involved.

Thereafter plaintiffs commenced this ac-
tion, alleging, among other things:

"That at the time of ·the execution of said
contract, and now, adjoining oil wells, which
would require offset wells, were and are now
draining oil in large quantities from said
leasehold premises, and will continue so to
do; that by reason of the premises plaintiffs
have been damaged in the sum of $10,000."

The cause was tried to the court, which
rendered the following judgment:

"The court finds that the following pro-
vision in the contract alleged and set forth
in the petition and sued on herein, to wit:
'A failure to begin operations as above set
forth on the above described premises within
the time provided in this contract and to con-
tinue the same with due diligence to comple-
tion shall work a forfeiture of the assign-
ment of the interest of the said leasehold
premises herein agreed upon, and shall cause
the same to be null and void and of no fur-
ther force or effect whatsoever'—gave the
defendant the right, after a derrick had been
placed upon said real estate and operation
begun thereunder, to declare said contract
forfeited, and that by reason thereof the
plaintiffs are not entitled to recover anything
from the defendant in this action."

The principal question for our considera-
tion is whether defendant had the right, by
virtue of the forfeiture clause therein, in the
absence of the consent of plaintiffs, to termi-
nate the contract by refusing to drill, with-
cut incurring liability for resultant dam-
ages.

The provisions of the contract in the in-
stant case are clearly distinguishable from
those in the oil and gas leases considered in
Frank Oil Co. v. Belleview Oil & Gas Co,
29 Okla. 719, 119 Pac. 260, 43 L. R. A.·(N. S.)
487, Deming Investment Co. v. Lanham, 36
Okla. 773, 130 Pac. 260, 44 L. R. A. (N. S.) 50,
and subsequent decisions, and construed to
confer a mere option upon the lessee, which
he might exercise or not, without incurring
further liability. Here for a sufficient con-
sideration—the undertaking of plaintiffs to
assign a one-half interest in an existing oil
and gas lease, and with which they com-
plied—defendant specifically obligated itself
to commence the drilling of a test well on
the lands involved, and to continue the same

with diligence to completion into a designate
sand, the approximate depth of which was
evidently known to the parties.

The manifest purpose of the parties was
the exploration and development of the leased
premises. Defendant defeated this purpose
by refusing to ·discharge its obligation, and,
now sets up its own default, under the for-
feiture clause, as relieving it from the al-
leged consequent damages. In our opinion
this it may not do.

In Cohn v. Clark, 48 Okla. 500, 150 Pac.
467, L. R. A. 1916B, 686, it was said by this
court:

"If the lessee's contention be true, then we
would meet the anomalous condition of a
party profiting by his own breach or gaining
advantage by his own wrong. Under such a
contract the lessor binds his hands and gets
nothing for the lease unless the pleasure of
the lessee moves him to action. Should we
determine that a failure to pay the rentals
stipulated, after a default in beginning opera-
tions, ipso facto operates to release the lessee
from all liability, why incumber the lease
with the sixth paragraph, known as the sur-
render clause? If failure to pay rentals nulli-
fies the lease automatically, then there is no
use of the surrender clause at all. It would
be useless to insert a surrender clause in a
lease requiring the lessee to go to the trouble
and expense of executing an actual recon-
veyance, when there is a provision in the
lease for his advantage which is self-execut-
ing upon his failure to pay the rentals. We
must construe this contract so as to give
some effect and meaning to every part of the
same. We are not permitted to say that the
parties hereto have deliberately inserted a
clause in this contract that is useless and
unnecessary, when a fair and reasonable con-
struction will give weight and effect to it,
and, following this line, we conclude that if
the surrender clause has been inserted in the
contract for the benefit of the lessee, and af-
fords him an easy and expeditious way of rid-
ding himself of the contract and its liability,
the forfeiture clause in paragraph 1 must
have been inserted for the benefit of the les-
sor only. This construction will give both
of the clauses the weight and effect that were
reasonably intended for them, and give both
of the parties to the contract a means of pro-
tection and a way of relieving themselves of
the contract."

See, also, Brown v. Wilson, 58 Okla. 392,
160 Pac. 94.

In Thornton on the Law of Oil and Gas,
sec. 151, the rule is announced as follows:

"A lessee cannot set up his own default in
order to terminate the lease or escape lia-
bility under its provisions. If he make de-
fault, not keeping the covenants of the lease,
it is with the lessor to declare a forfeiture,
or that it shall no longer be in force. If a

mining lease provide that if the mine should not be worked the lease should be void, the word 'void' means 'voidable' at the election of the lessor; and it will be necessary for him to do some act evincing an intention to avoid it before it can be considered avoided or terminated. This is true even though a clause provides that a failure to do the thing covenanted to do 'shall render this lease null and void, together with all rights and claims, and not binding on either party and not to be revived without the consent of both parties hereto in writing.' 'Such provisions of forfeiture,' said the court, 'are for the benefit of the lessor, and not for the benefit of the lessee. The lessee cannot plead his own default or wrong in discharge of his obligation to drill or pay rental.' The lessor has the option to discontinue the lease, on default of the lessee, or affirm the continuance of the contract. Where a lease provided that the lessee's failure to complete a well within a period certain, or, in default thereof, to pay a certain yearly rental, should render the lease 'null and void,' and that all rights and claims should therefrom cease, 'with like effect as if this agreement had never been made,' it was held that the lessee, by his own default could not relieve himself from liability already incurred."

In Woodland Oil Co. v. Crawford, 55 Ohio St. 161, 44 N. E. 1093, 34 L. R. A. 62, it is said:

"The principal contention in this case arises upon that part of the lease which provides that a test well should be drilled within one year, and in default payment of a yearly rental of $128 for further delay, and the further provision that a failure to drill the test well or pay the rental should render the lease null and void, and not binding on either party, and not to be revived without the consent in writing of both parties. It was this provision that was relied upon in the demurrer to the amended petition and in the third general defense in the answer of the oil company. Reduced to its essence, this is a promise in writing upon sufficient consideration to pay a yearly rental of $128 for the right to use, to a limited extent, certain premises, with a further provision in the same instrument, that a failure to pay should discharge the debt; that a default of payment should be the equivalent of payment; that failure should be performance; that nonpayment should be payment. Such contradictions in like instruments have caused the courts to look critically into such instruments to ascertain the real intention of the parties, because such contracts cannot be enforced according to their letter. A promise to pay cannot be fulfilled by a failure to pay. A promise to drill a well cannot be satisfied by failure to drill such well. The proper construction to be placed upon such an agreement is, that upon failure of the lessee to drill a well, or pay the rental, or both, as the case may be, the lessor may elect to put an end to the lease, and enforce payment of the promised rental, or sue for damags for

failure to drill the well, or he may elect to have the lease continue in force to the end of the term, and enforce the drilling of wells, and the payment of rentals, as provided in the lease."

In Evans v. Consumers' Gas Trust Co. (Ind.) 29 N. E. 398, 31 L. R. A. 673, it is held:

"A provision in an oil and gas lease that it shall be null and void on failure of the lessee to perform his agreement is no defense to him for breach of his agreement, but merely gives the lessor an option to declare it void for that reason."

The lease there under consideration contained a forfeiture clause similar to the one in the case at bar. In the body of the opinion it is said:

" 'Appellee contends that a proper construction of the leases gives it the option to avail itself of the benefits of the contract or not, as it pleases; if it fails to avail itself according to the terms of the contract and within the time limited, the right to do so expires and the contract becomes a nullity;' also that the contracts are not properly leases, but 'merely contracts between the parties for the doing of certain things and the payment of certain sums of money,' with the remarkable and peculiar feature of a contract that the entire failure of one party to perform not only forfeits his rights under it, but relieves him of liability. This is the effect, the appellee insists, of the provisions of the contract that a failure to complete such well or to make the deposit or payment as stipulated should render the lease null and void, and to remain without effect between the parties. * * *

"It is, however, not material whether it be regarded as a lease or not. Whether it be regarded as a lease, a license, or a mere option, that construction is unsound."

In Galey Bros. v. Kellerman, 123 Pa. 491, 16 Atl. 474, it is said:

"The lessees had the right to enter at any time during the eight months and either drill a well or make the stipulated payment. If they did neither within the time limited, their right of entry was extinguished and the contract itself was at an end. But the acts that forfeited their rights did not also forfeit those of the lessor. Their liabilities growing out of their nonperformance are to be distinguished from their rights under the contract. The latter they could forfeit, but the former belonged to the lessor, and could be lost only by his act."

It is contended by defendant that, anticipating a breach of the contract, the parties by the forfeiture clause stipulated in lieu of damages that the failure on the part of defendant to comply with its obligation to complete the well should result merely in relieving plaintiffs of their undertaking to execute and deliver an assignment of a one-

half interest in the lease. This position we do not consider tenable.

In Woodland Oil Co. v. Crawford, supra, it is said:

"Parties may agree that in the case of failure to drill or failure to pay, or both, the lessee shall be relieved of his obligation upon such terms as the parties may agree upon in the lease, whether the terms be of value to the lessor, or loss or inconvenience to the lessee, but a naked default and nonperformance, as in this lease, cannot be held to discharge the obligations of the lessee. The following authorities are in point: Leatherman v. Oliver, 151 Pa. 646, [25 Atl. 309]; Ray v. Western Pennsylvania Nat. Gas Co., 138 Pa. 576 [20 Atl. 1065] 12 L. R. A. 290 [21 Am. St. Rep. 922]; Clark v. Jones, 1 Denio (N. Y.) 516, 43 Am. Dec. 706; Galey Bros. v. Kellerman, 123 Pa. 491 [16 Atl. 474]; Jones v. Western Pennsylvania Nat. Gas Co., 146 Pac. 204 [23 Atl. 386]; Wills v. Manufacturers' Nat. Gas Co., 130 Pa. 222 [18 Atl. 721], 5 L. R. A. 603; Ogden v. Hatry, 145 Pa. 640 [23 Atl. 334]; Smith v. Miller, 49 N. J. Law, 521 [13 Atl. 39]; Taylor Land. & T., sec. 492; 1 Smith, Lead. Cas. 102, 119."

The question of the measure of damages is not properly before us on this appeal.

The judgment of the trial court should be reversed and the cause remanded.

By the Court: It is so ordered.