10 So.2d 695

**FOGLE v. FEAZEL.**

No. 36405.

Nov. 4, 1942.

R. D. Watkins, of Minden, for plaintiffs-appellants.

Oliver & Digby of Monroe, and A. S. Drew, of Minden, for defendant-appellee.

ODOM, Justice.

The plaintiff. Fogle executed a mineral lease in favor of the defendant Feazel covering the NW ¼ of the NW ¼ of Section 10, Township 17 North, Range 9 West, in Webster Parish. The lease contract was dated August 29, 1940, and the primary term of the lease was four and one-half months from its date. The lease contract contained the usual stipulation that, in case minerals of any kind were produced from the leased premises, the lease should continue as long as minerals were produced from the land in paying quantities.

` The lease contract contained the following stipulation: "Lessee obligates and

binds himself to commence the actual drilling of a well in search of oil and/or gas on a location to be made in Northeast quarter of Section 10, Township 17 N. Range 9 West, Webster Parish, Louisiana, and within three quarters of a mile of the premises herein leased not later than September 15th, 1940, and to continue the drilling of the said well with due diligence to a depth of not less than sixty-two hundred feet, unless crude oil is produced in paying quantities at a lesser depth."

The above-quoted stipulation in the lease contract relates, as will be seen from its reading, to the commencement of drilling operations on a tract of land not covered by the lease contract here involved—a tract not owned by the plaintiff lessor.

The lease contract contained also the following stipulations:

"It is distinctly understood and agreed that the primary and moving consideration for the execution of this oil and gas lease by the lessor herein is the drilling of a well, as above referred to, and is understood to mean to begin the actual drilling by September 15th, 1940, and not the preparation for the drilling of the said well, and the lessor and lessee hereby agree that but for the obligation of drilling said well this lease would not have been executed by the lessor herein.

"Lessee further agrees that regardless of whether or not the well above referred to is a producer or non-producer, that he will, not later than December 15th, 1940 begin the actual drilling of a second well of like depth to be located on the premises leased

herein, or failure to do so shall immediately forfeit this lease and same shall then become null and void."

The phrase "the well above referred to" relates to the well which the lessee obligated himself to drill on land in the NE ¼ of Section 10—land not owned by the lessor and not covered by the lease contract.

Plaintiff alleged, and this is admitted, that the defendant "failed to carry out the obligations and conditions imposed upon him in said lease by September 15th., 1940". The obligation imposed upon the lessee by the lease contract to begin drilling operations by September 15, 1940, was the obligation to begin drilling operations, not on the land covered by the lease contract and owned by plaintiff, but on land belonging to another in the NE ¼ of Section 10.

The plaintiff Fogle alleged that the defendant Feazel was indebted to him in the sum of $50,000, together with legal interest from September 15, 1940, "as will be more fully shown hereafter".

In Paragraph 2 of his petition, plaintiff alleged that he executed an oil and gas lease in favor of the defendant, covering the NW ¼ of the NW ¼ of Section 10, Township 17 North, Range 9 West, and in Paragraph 3 he alleged that, according to the lease contract, the primary and moving consideration for the execution of the lease was the obligation upon the part of defendant to commence the actual drilling of a well in search of minerals "on a location to be made in the NE ¼ of Section 10, Township 17 N. Range 9 West, Webster Parish, Louisiana, and within

three-fourths of a mile of the premises therein leased not later than September 15th, 1940".

Paragraph 6 of plaintiff's petition reads as follows: "Your petitioner shows that notwithstanding the obligations and conditions imposed on defendant to drill a well as alleged and notwithstanding demand made on him as alleged, nevertheless he has failed to carry out same and therefore has caused your petitioner to sustain damages in an amount and sum of Fifty Thousand & No/100 ($50,000.00) Dollars, being the amount your petitioner alleges would have been expended by defendant in the drilling of such a well contracted for."

He prayed for judgment against the defendant in the sum of $50,000, plus interest and costs.

The defendant in answer admitted the execution of the lease contract and admitted that he had failed to commence the drilling of a well on a location to be made in the NE ¼ of Section 10. But he denied specifically that he was indebted unto the plaintiff in any sum whatever. There was judgment in favor of the defendant, rejecting plaintiff's demands and dismissing his suit at his costs. From this judgment plaintiff appealed.

This is a suit for damages alleged to have resulted from the breach of a contract. At the trial of the case, the plaintiff introduced and filed in evidence the lease contract, together with a written demand made on the defendant to carry out the obligation imposed upon him to commence the drilling of a well on a location to be made in the NE ¼ of Section

10. He also introduced in evidence the testimony of Mr. W. G. Wray, an expert drilling contractor, which testimony was taken out of court by consent. The questions asked Mr. Wray by plaintiff's counsel show that the only information sought from him by plaintiff related to the cost of the drilling of the well. Mr. Wray testified that it would cost approximately $18,600 to drill a well in the NE ¼ of Section 10, plus the cost of a few extras which he mentioned. Upon the introduction of the lease contract, the demand to drill, and the testimony of Mr. Wray, plaintiff closed his case.

The defendant introduced some testimony which tends to show that the well could have been drilled at a cost not exceeding $8,000.

One of the defenses urged was that the lease contract never went into effect, because it was executed with the distinct understanding that it was not to go into effect unless and until the defendant could procure leases on a block of land containing at least 300 acres in the vicinity of the land owned by plaintiff and covered by the lease contract, and that, as a matter of fact, the contemplated leases were never obtained and could not be obtained by defendant. Considerable testimony was adduced, over plaintiff's objection, relating to the question whether it was understood that the contract was not to go into effect in case defendant failed to secure leases on a 300-acre block. Counsel for plaintiff objected to the introduction of parol testimony to show the intent of the parties touching this particular question. This ob-

jection was overruled by the trial judge, and the testimony was admitted.

However, we find it unnecessary to discuss this particular phase of the case, for the reason that our opinion is, and we hold, that plaintiff failed to prove that he was damaged by defendant's failure to drill the well in the NE ¼ of Section 10.

This is a suit, not·to enforce the obligations of a contract, but to collect damages which plaintiff claims he sustained on account of its breach. Plaintiff did not allege, nor does he now claim, that he suffered injury or damage because of defendant's failure to drill a well on his, plaintiff's land covered by the lease contract. Plaintiff's suit is grounded upon the proposition, and his argument is, that he has suffered injury and damage on account of defendant's failure to drill a well on land not owned by him and in which he has no interest whatever.

It is not contended, or even suggested, that, if a producing well had been drilled on the land in the NE ¼ of Section 10, land not owned by plaintiff, he would have been entitled to a share of the products of the well.

Plaintiff's petition makes it clear as to the manner in which he claims to have been damaged. He alleged in Paragraph 6 of his petition that, notwithstanding the obligation imposed upon defendant to drill a well in the NE ¼ of Section 10, defendant has failed to drill that well and "therefore has caused your petitioner to sustain damages in an amount and sum of Fifty Thousand & No/100 ($50,000.00) dollars, *being the amount your petitioner alleges would have been expended by defendant in the drilling of such a well contracted for"*. (Italics are the writer's.)

Plaintiff relies solely on the ruling by this court in the cases of Fite v. Miller. There the plaintiff sued the defendant for damages which he claimed he had sustained on account of the defendant's breach of a contract to drill a well for the production of oil and gas. The defendant excepted to the plaintiff's petition on the ground that it set out no cause of action, which exception was sustained by the lower court, and plaintiff appealed. The opinion on the exception is reported in 192 La. 229, 187 So. 650, 122 A.L.R. 446. In that case, it was held that the exception was not well founded, and the case was remanded for trial on its merits. The opinion on the merits of the case is reported in 196 La. 876, 200 So. 285.

Counsel for plaintiff says in his brief at page 9 that the question presented in the case at bar "has definitely been settled by the Supreme Court of the State of Louisiana in the cases of Fite v. Miller". Immediately following the above statement in plaintiff's brief, he quotes Paragraph 3 of the syllabus in the case reported in 196 La. 876, 200 So. 285, which reads as follows: "The measure of damages for defendant's breach of contract to drill oil well to a specified depth on lease owned by plaintiff and defendant was the amount that it would have cost to drill the well at the time of performance, in absence of proof of profits of which the plaintiff was deprived by the breach of contract. Rev. Civ.Code, art. 1934."

A reading of this quotation shows at a glance that the ruling made in the cases of Fite v. Miller has no application to the case at bar, for it shows that the court was speaking of a contract to drill an oil well "on lease owned by plaintiff and defendant" and of "profits of which the plaintiff was deprived by the breach of contract". In other words, the obligation which defendant assumed was to drill a well on a lease in which the plaintiff had an interest, whereas in the case at bar plaintiff is seeking damages for defendant's failure to drill a well for the production of oil or gas on land in which he has no interest whatever.

In the Fite v. Miller cases, the factual set-up was, as shown by the opinion reported in 192 La. 229, 187 So. 650, 122 A.L.R. 446, that Fite, the plaintiff, owned an oil and gas lease covering a 20-acre tract of land; that Fite transferred to the defendant Miller the lease in so far as it covered the 10 acres forming the northern half of the tract and retained the lease in so far as it affected the 10 acres forming the southern half of the tract. Thereafter and on the same day, Fite transferred to Miller a one-half interest in the lease in so far as it affected the southern 10 acres of the tract. The consideration for the transfer by Fite to Miller of a one-half interest in the lease, in so far as it affected the south 10 acres of the tract, was $1,000 paid by Miller and cash and his obligation to drill a well on each of the 10-acre tracts to a specified depth in search of oil or gas.

Miller, the defendant, drilled a well on the north 10 acres of the tract, in which the

plaintiff Fite no longer had any interest, having disposed of his interest to Miller. This well was a dry hole. Miller then refused to drill on the south 10-acre tract, the lease on which was owned by Fite and Miller jointly. In other words, Miller, the defendant, refused to drill a well in which the plaintiff Fite would have been interested and from the drilling of which Fite would have derived benefits if it had been a producer. Fite, the plaintiff, sued Miller, the defendant, for the breach of the contract to drill a well on the south 10-acre tract.

No well having been drilled on the south 10-acre tract, in which Fite had an interest, the court held that Fite had been damaged by Miller's breach of the contract, and that the measure of his damage was the value of the uncertain hope which Fite had had in consequence of Miller's assurance that the well would be drilled.

Counsel for the defendant Miller contended, and the district judge held, that, since there was no assurance that a well, if drilled on the southern 10-acre tract in which the plaintiff had an interest, would have been a producer, there was no way of proving that the plaintiff sustained a loss or was deprived of a profit by the failure of the defendant to drill the well. This court answered that contention by saying: "The loss which Fite sustained in this instance was the loss of the chance or prospect which he would have had of being enriched if Miller had fulfilled his contract. The mere chance or prospect of being enriched by the drilling of a well in search of oil or gas is, of itself, a thing of value." 192 La. 238, 187 So. 650, 653.

The distinction between the Fite v. Miller cases and the case at bar is that in those cases Fite, the plaintiff, had a "chance or prospect" of "being enriched by the drilling of a well in search of oil or gas", whereas in the case at bar it is not alleged or contended that the plaintiff Fogle had any chance or prospect of being enriched by the drilling of the well on land in which he had no interest whatever.

In the Fite v. Miller case, 192 La. 229, 187 So. 650, we followed the leading cases of Covington Oil Co. v. Jones, Tex.Civ. App., 244 S.W. 287; All-American Oil & Gas Co. v. Connellee, 5 Cir., 3 F.2d 107; Continental Oil Co. v. Fisher Oil Co., 10 Cir., 55 F.2d 14, and Pen-O-Tex Oil & Leasehold Co. v. Pittsburgh Western Oil Co., 3 Cir., 66 F.2d 657.

In each of those cases, it was held that the amount of damages due to the promisee for the promisor's failure to drill an oil well was the cost of completing the work. But a reading of those cases shows that in each case the promisee had a real, substantial interest in the drilling of the well.

In the Covington Oil Co. case, the defendant bound and obligated himself to drill a well in search of oil or gas on a tract of land owned by the lessor. In the All-American Oil & Gas Co. case, the defendant bound and obligated himself to drill a well on a lease in which the plaintiff was interested. The same was true in the Continental Oil Co. case. In that case the court used the following significant language [55 F.2d 17]: "The cost of drilling a dry hole was stipulated [in the stipulation of facts on which the case was submitted] to be $50,000. This sum represented the measure of damages the plaintiff was entitled to recover, *as it had a direct interest in the well.*" (Italics are the writer's.)

Clearly the ruling in the Fite v. Miller cases does not support the contention of the plaintiff in the case at bar.

The following statements appear in Words & Phrases, Permanent Edition, volume 11, page 16:

"The word 'damages' is defined as meaning pecuniary compensation, recompense, or satisfaction for an injury sustained."

" 'Damages' as used in discussing liability for violation of contract rights and obligations is but another word for compensation, an equivalent in money for loss sustained by the complaining party by reason of violation of such right or obligation."

The plaintiff, having failed to prove that he was injured by defendant's failure to drill, is not entitled to "compensation" or "recompense". Furthermore, there is nothing to indicate that the parties to this lease ever contemplated that defendant's failure to drill would subject him to the penalty of paying the cost of the drilling of a well, or any other sum of money. To the contrary, the parties seem to have contemplated that the only penalty for defendant's failure to drill was the forfeiture of the lease executed in his favor by the plaintiff, because the lease contract contains the following pertinent stipulation: "Lessee further agrees that regardless of whether or not the well above referred to

[the well to be drilled on land in the NE ¼ of Section 10] is a producer or non-producer, that he will, not later than December 15th, 1940 begin the actual drilling of a second well of like depth to be located on the premises leased herein, or failure to do so shall immediately forfeit this lease and same shall then become null and void."

It is further stipulated in the contract that, in the event the lessee is for any reason unable to obtain a permit to drill on the premises leased therein, then and in that event the lease "shall become null and void, and that the lessor herein is under no obligation to join in any kind of lease of land unitization contract whatever"; and further stipulated that, should drilling operations cease for more than 15 days on either of the wells above referred to "without the written permission of said lessor that then and in that event this lease shall become null and void and of no force and effect, at the option of the lessor". It is further stipulated in the lease that the lessor agrees "that there shall be no production by the use of by-passes or by-pass and that in the event of such a by-pass or by-passes should be used that then, and in that event this lease may be declared void at the option of the lessor".

These stipulations clearly indicate, we think, that the only penalty contemplated by the parties for the violation of any of the provisions of the lease was that, in case the provisions of the lease were violated in any respect, the lease was to become null, void, and of no effect.

For the reasons assigned, the judgment appealed from is affirmed at plaintiff's costs.

FOURNET, J., concurs in the decree.

ROGERS, J., absent.