## JOYCE v. WYANT et al.
### No. 1782.

United States District Court,
W. D. Michigan, S. D.

June 11, 1952.

Harrington, Waer, Cary & Servaas, and Oscar E. Waer, Grand Rapids, Mich., Charles B. Emery, Shreveport, La., for plaintiff.

Kinne & Scovel and Harry C. F⸱ ⸱ne, Sr., Chicago, Ill., Amberg, Law & Buchen and R. Dale Law, Grand Rapids, Mich., for defendants.

STARR, District Judge.

On July 6, 1950, plaintiff Joyce executed and delivered to one A. W. Hutchings an oil-gas-and-mineral lease covering 153 acres more or less in Caddo parish, Louisiana.

Shortly thereafter Hutchings assigned an undivided $^{13}/_{16}$ of $^{13}/_{16}$ interest in this lease to defendant Wyant and an undivided $^9/_{16}$ of $^{13}/_{16}$ interest to defendant Koelbel. The lease and assignments were duly recorded. The pertinent provisions of the lease were as follows:

"Lessor in consideration of Lessee's obligation to drill four wells on the premises herein leased as hereinafter set forth, of the royalties hereinafter provided and of the agreements of Lessee hereinafter contained, hereby grants, leases and lets unto Lessee for the purpose of exploring, prospecting, drilling and mining for and producing oil, gas and other minerals to a depth of 3600' from the surface of the ground, laying pipe lines, building tanks, fire stations, telephone lines and other structures thereon to produce, save, take care of, treat, transport and own said products, and housing its employee, the following described land in Caddo parish, Louisiana, to-wit: (description of land); it being expressly understood that Lessor reserves unto himself, his heirs and assigns, any and all rights below said depth of 3600' together with the right to lease and let the above described premises below the said 3600' for the production of oil, gas and other minerals, and to produce oil, gas and other minerals from the leased premises below said 3600' depth, under and with the same rights and privileges which are granted Lessee herein, and the right of ingress to and egress from the premises.

"*The term of this lease is 60 days from date hereof and as long thereafter as Lessee complies with his obligations hereunder, and he produces oil, gas or other minerals in paying quantities from the leased premises.*

"The royalties to be paid by Lessee are:

"(a) On oil, and other hydrocarbons which are produced at the well in liquid form by ordinary production methods, $^3/_{16}$ of that produced and saved from said land, same to be delivered at the well in tanks provided by Lessor, or to the credit of Lessor into the pipe line to which wells may be connected. * *

"The actual consideration for this lease is that Lessee hereby obligates himself to drill four wells on the leased premises at such locations as he might choose; provided, however, that one of said wells shall be drilled in the NW¼ of the leased premises, another in the NE¼, one in the SW¼ and another in the SE¼.

"Lessee shall begin actual drilling of a well, hereinafter referred to as 'initial well,' on the leased premises within 60 days from date hereof in search of oil, gas or other minerals, and prosecute said drilling operations with due diligence and in a workmanship like manner to the said depth of 3600', unless oil or gas in paying quantities is found at a lesser depth. Following completion of the 'initial well,' whether producer or a dry hole, Lessee shall in succession drill, under like conditions and to the same prospective depth provided for the drilling of the 'initial well,' three other wells on the leased premises *within 60 day intervals following the completion of the immediately preceding well drilled by Lessee hereunder.* * * *

"Lessee shall have the right at any time during or *after the expiration* of this lease to remove all property and fixtures placed by Lessee on said land, including the right to draw and remove casing. * * *

"The rights of either party hereunder may be assigned and the provisions hereof shall extend to the heirs, successors and assigns, but no change or divisions in ownership of the land or royalties however accomplished shall operate to enlarge the obligations or diminish the rights of the parties hereto. * * *

"In case of cancellation or termination of this lease for any cause, Lessee shall have the right to retain under the terms hereof ten acres of land around each well producing such tract

to be designated by Lessee in as near a square form as practicable. And in the event Lessor considers that operations are not being conducted in compliance with this contract, Lessee shall be notified in writing of the facts relied upon as constituting a breach hereof and Lessee shall have ten (10) days after receipt of such notice to comply with the obligations imposed by virtue of this instrument."

On June 8, 1951, plaintiff Joyce filed complaint alleging the execution and delivery of the lease; the lessee's assignment of certain interests therein to defendants Wyant and Koelbel; the issuance to defendants on August 8, 1950, by the conservation department of Louisiana of a drilling permit for the drilling of the first or initial well on the leased premises; and the completion of the well to a depth of 2,400 feet by about August 22, 1950. He alleged that "up to November 6, 1950," the defendants had failed to begin the drilling of a second well and that on that date he notified them by letter that they had breached the lease by failing to begin the second well within 60 days after completing the first well. He alleged that defendants had failed and refused to begin the drilling of a second well "on the ground that said first or 'initial well' produces less than eight barrels per day and that further operations would therefore be unprofitable." He alleged that on November 15, 1950, the defendants had assigned their interest in the lease, insofar as it covered the 10 acres of the leased premises on which the first well had been drilled, to one George Bennett,[1] and that on the same day they had executed a release and quitclaim of the lease (except as to the 10 acres assigned to Bennett) back to plaintiff. He further alleged that he did not learn of this action by defendants until December 10, 1950, and that on the next day, December 11th, he wrote them refusing to accept their release and quitclaim. Plaintiff further alleged that by their failure and refusal to drill the three additional wells on the premises,

the defendants had breached the lease, and that their breach had resulted in his sustaining damages in the amount it would cost to drill the three wells. He asked for money judgment in the amount of $100,000..

On July 20, 1951, the defendants filed motion, which, among other things, asked for dismissal of the complaint on the ground that when the defendants failed to begin the drilling of the second well within 60 days after completion of the first well, the lease term ended and the lease terminated, and, therefore, that the complaint failed to state a claim upon which relief could be granted. In considering the defendants' motion to dismiss, the court must assume the truth of all material and well pleaded allegations of fact, and the motion should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim. Callaway v. Hamilton Nat. Bank of Washington, D.C.Cir., 195 F.2d 556; Lexington Federation of Telephone Workers. v. Kentucky Telephone Corp., D.C., 11 F.R.D. 526; Turner v. United States Gypsum Co., D.C., 11 F.R.D. 545; Shapiro v. Royal Indemnity Co., D.C., 100 F.Supp.. 801.

The lease stated in plain and unambiguous language that its term was 60 days from the date thereof and so long thereafter as the lessee complied with his. obligations thereunder and produced oil,. gas or other minerals in paying quantities. Under this plain wording the primary lease term of 60 days could be extended only by the lessee's compliance with his. obligation to begin drilling the wells within the specified times and by his production from the leased premises of oil, gas or other minerals in paying quantities.

It appears from the complaint that the defendants, as assignees of lessee Hutchings, began drilling the first or initial well within the 60-day primary term of the lease. The lease term was thereby extended for the period required for drilling this.

---

1. It should be noted that the lease provided: "In case of cancellation or termination of this lease for any cause, Lessee shall have the right to retain under the terms hereof ten acres of land. around each well."

first well. The first well was completed about August 22, 1950, and the lease term was thereby automatically extended for a further period of 60 days, within which the defendants were required to begin the drilling of a second well. The plaintiff alleged that by November 6th of that year the defendants had not yet begun drilling the second well. From this allegation of fact it is clear that the defendants failed to comply with their obligation to begin the drilling of a second well within 60 days after the completion of the first well. Furthermore, although the complaint alleged that the first well produced oil, there is no claim or allegation that it produced oil, gas or other minerals in paying quantities, which was one of the requirements for an extension of the lease term.[2]

■ The principal question raised by defendants' motion to dismiss is—what was the effect upon the rights and liabilities of the parties of the defendants' failure to begin the drilling of a second well within 60 days after completion of the first well? The plaintiff contends that this failure constituted a breach of the lease and entitled him to money damages equal to the cost of drilling the three remaining wells. On the other hand, the defendants contend that the provision of the lease requiring the lessee to drill the wells within the specified times was merely a limitation upon the lessee's estate and that when the defendants failed to drill the second well within the specified time, the lease term ended and the lease automatically terminated.

The provisions stating that the consideration for the lease was the lessee's obligation to drill four wells on the leased premises must be considered in connection with other provisions, in particular in connection with the earlier clause which provided that the term of the lease was for 60 days and as long thereafter as the lessee complied with his obligation to drill the wells within the times specified. This term clause, obviously inserted by the lessor for his own

protection, determined the period the lease should run and fixed the duration of the interest granted to the lessee. In considering the term clause in an oil-and-gas lease in the case of J. J. Fagan & Co. v. Burns, 247 Mich. 674, 679, 226 N.W. 653, 655, 67 A.L.R. 522, the court said:

"By the great weight of authority, the term clause, which is the habendum clause, dominates the period for which the lease shall run, so that, unless it is properly modified by other provisions, all rights of the lessee cease at the expiration of the fixed time stated in the term clause".

The plaintiff lessor protected himself by providing that the lease was for a definite term, and he could not later, by letter notices to the defendants, extend the life of the lease after its term had ended. It is significant that the lease provided that in case of its termination "for any cause" the lessee had the right to retain 10 acres of land around each producing well and also the right to remove all his property and fixtures from the premises, including well casing.

■■ The lease here in question by its provisions falls within that recognized classification of oil-and-gas leases referred to as "unless" leases. That is, the lease provided in effect that its term would end and it would automatically terminate *unless* the lessee or his assignees complied with their obligation to drill the wells within the prescribed times. The more usual form of "unless" oil-and-gas lease provides in substance that it is for a definite term and shall then terminate "unless" the lessee begins drilling operations or pays a specified sum of money for an extension of the term. The term of the present lease could be extended only by the lessee or his assigns drilling within the specified times, and producing oil, gas or other minerals in paying quantities. Although there was no provision in this lease for its extension beyond its specified term by the payment of

2. In 2 Summers on Oil and Gas, Perm. Ed., § 298, page 135, it is stated: "The courts have generally defined paying quantities * * * to be the production of such quantity of oil or gas as will pay the lessee a profit after deduction of the cost of operating the well or wells, although the original cost of drilling may never be repaid."

a sum of money in lieu of drilling, the legal effect of the defendants' failure to extend the term by drilling the second well within the prescribed time would be the same as under the more usual form of "unless" lease where the lessee failed to obtain an extension of the term either by drilling or by paying a sum of money.

In 58 C.J.S., Mines and Minerals, § 203, at page 491, it is stated:

"An 'unless' clause is not a forfeiture provision, but is rather a limitation on the lessee's estate or the period of the grant, and, as a general rule, if the lessee fails to drill or complete a well or pay the rental within the stipulated time the lease automatically terminates in accordance with its terms, without the necessity of reëntry, action, or their equivalents by the lessor." (See authorities cited.)

In 2 Summers on Oil and Gas, Perm. Ed., § 240, pages 81, 82, it is said:

"When a lease does not recite or acknowledge the payment of an initial cash consideration, but contains a covenant to pay royalties and to drill within a specified time, but has the provision that, if the lessee does not drill within the time mentioned the lease is to terminate, unless the lessee pays certain sums periodically in advance to keep the lease alive (unless drilling clause), it does not place a binding duty upon the lessee to do anything. The contract is in effect the same as a drill or pay lease, coupled with a surrender clause. The lessee is not bound to drill or to pay. If he does not drill or pay the lease ends by its own terms."

In 2 Summers on Oil and Gas, § 452, pages 494–497, it is stated:

"The clause relative to the drilling of wells *within a stated time,* or the periodic payment of money, is used, not for the purpose of fixing a duty upon the lessee to drill or pay, but to state a limitation upon which the lease terminates if these acts are not performed. Consequently, if the lessee fails to drill within the stipulated time, the lessor cannot recover in an action for rent, or recover in an action for damages for failure to drill, for the obvious reason that there is no duty upon which to found such actions. * *

"Where the 'unless' drilling clause is used a failure of the lessee to drill or pay a stipulated sum of money ipso facto terminates the lease without the necessity of re-entry, action, or their equivalents by the lessor." (See authorities cited.)

The courts have considered many cases involving oil-and-gas leases which provided for a specified term and so long thereafter as oil and gas should be produced from the premises in paying quantities. There is really no distinction between the legal effect of such a provision and the legal effect of the provision in the present lease, which provided for a definite term of 60 days and as long thereafter as the lessee complied with his obligation to drill and produce oil, gas or other minerals in paying quantities.

In the case of Chaney v. Ohio & Indiana Oil Co., 32 Ind.App. 193, 69 N.E. 477, at page 479, the court said:

"This lease provides: 'The party of the second part, his heirs or assigns, to have and to hold the said premises for and during the term of one year from the date hereof, and so long thereafter as oil and gas can be produced in paying quantities.' It has been decided that this clause means that the lease is for a definite term of one year from its date, and that this term, if enlarged, must be the result of the production of gas or oil in paying quantities within the year specified in the lease itself. If such a contingency does not happen, then the lease expires, and is of no avail between the parties at the end of the year. Western Pennsylvania Gas Co. v. George, 161 Pa. 47, 28 A. 1004; Brown v. Fowler, [65 Ohio St. 507] 63 N.E. 76; Cassell v. Crothers, [193 Pa. 359] 44 A. 446. In the case of Brown v. Fowler, supra, the habendum clause of the lease was as follows: 'To have and to hold the same unto the lessee, his heirs and assigns, for the term of two years from the date

hereof, and as long thereafter as oil or gas is found in paying quantities thereon.' In construing this lease the court said: 'This clause means that the term of the lease is limited to two years, but that if, within the two years, oil and gas shall be found, then the lease shall run as much longer thereafter as oil and gas shall be found in paying quantities; but, if no oil or gas shall be found within the two years, the lease shall, at the end of the two years, terminate, not by forfeiture, but by expiration of term, and after the expiration of said two years no further drilling can be done under the lease.' "

In the case of Henry v. Gulf Refining Co., 179 Ark. 138, 15 S.W.2d 979, 982, the court said:

"When the year expired and he (lessee) had not dug a well and found oil or gas, within the depth prescribed by the terms of the leases, the leases themselves terminated, unless he complied with the other conditions in the leases. A lease may terminate and end by the expiration of the term for which it was created as well as by breach or a forfeiture under the terms of the lease. Hence when the year from the date of the expiration of the lease which was assigned to appellant expired without his having drilled a well as required by its terms, * * * his rights under it terminated by the provisions of the lease itself."

In 2 Summers on Oil and Gas, § 303, pages 165, 172, 170, and § 303.1, 1951 Supp. page 59, it is stated:

"By a long line of decisions construing the unless drilling clause it has been held that the failure of the lessee to drill or pay is a limitation upon which the lease automatically terminates. * * *

"The unless lease does not create duties in the lessee to drill or pay. If he does neither, the lease terminates automatically. * * *

"The habendum clause stating a definite term, long or short, accompanied by the usual *thereafter* clause, providing for the extension of the lease after the definite term, is the one clause in the lease which is designed to state the ultimate limits of the life of the lease. * * *

"The purpose of the habendum clause of an oil and gas lease is to fix the ultimate duration of the interest granted to the lessee in the lands described in the granting clause."

For other authorities bearing upon the question of the termination of the lease involved in the present case, see Producers Oil & Gas Co., Inc., v. Continental Securities Corporation, 188 La. 564, 177 So. 668; McCrabb v. Moulton, 8 Cir., 124 F.2d 689; Empire Gas & Fuel Co. v. Saunders, 5 Cir., 22 F.2d 733; Humble Oil & Refining Co. v. Davis, Tex.Com.App., 296 S.W. 285; 2 Summers on Oil and Gas, § 337, pages 211–218; 1 Thornton on Oil and Gas, § 233, page 410.

The lease here in question was executed in Louisiana and covered land located in that State and, therefore, questions as to the rights and liabilities of the parties under the lease should be determined in accordance with the law of that State. The factual situation considered by the Supreme Court of Louisiana in the case of Fogle v. Feazel, 201 La. 899, 10 So.2d 695, was substantially similar to that before the court in the present case. Plaintiff Fogle executed an oil-and-gas lease to defendant Feazel, which provided that the lessee would commence the actual drilling of a well on a certain location "not later than September 15th, 1940" and continue the drilling of the well with due diligence to a depth of not less than 6,200 feet unless oil was produced in paying quantities at a lesser depth. The lease also provided that regardless of whether or not this first well was a producer, the lessee would begin the actual drilling of a second well at another location not later than December 15, 1940. The lessee failed to begin drilling operations within the time specified, and the lessor began suit claiming that the measure of his damages was the cost of drilling the well which the lessee had failed to drill. In denying the lessor's right

to recover damages, after discussing and reviewing its prior decisions in Fite v. Miller, 192 La. 229, 187 So. 650, 122 A.L.R. 446, and Fite v. Miller, 196 La. 876, 200 So. 285, the court said, Fogle v. Feazel, 10 So.2d at pages 698, 699:

"There is nothing to indicate that the parties to this lease ever contemplated that defendant's failure to drill would subject him to the penalty of paying the cost of the drilling of a well, or any other sum of money. To the contrary, the parties seem to have contemplated that the only penalty for defendant's failure to drill was the forfeiture of the lease executed in his favor by the plaintiff, because the lease contract contains the following pertinent stipulation: 'Lessee further agrees that regardless of whether or not the well above referred to * * * is a producer or non-producer, that he will, not later than December 15th, 1940 begin the actual drilling of a second well of like depth to be located on the premises leased herein, or failure to do so shall immediately forfeit this lease and same shall then become null and void.' * *

"These stipulations clearly indicate, we think, that the only penalty contemplated by the parties for the violation of any of the provisions of the lease was that, in case the provisions of the lease were violated in any respect, the lease was to become null, void, and of no effect."

Although the decisions in the Fite v. Miller Cases cited above appear to sustain the plaintiff's contention in the present case, it should be noted that the lease involved in the Fite Cases did not contain a provision that its term was for a specified period after date, and as long thereafter as the lessee complied with his obligations thereunder. This provision in the present lease that it was for a 60-day term and that the term could be extended only by the lessee's complying with his obligations thereunder distinguishes this case from the Fite Cases.

There was no provision in the present lease that if the lessee failed to drill, he would be liable for money damages. It provided in effect that *unless* the lessee or his assigns drilled the wells within the specified times, the lease term would end, and no notice of termination was necessary. The lease was not forfeited, but by its own provisions its term ended and it automatically terminated when the defendants failed to comply with their obligations thereunder. Upon the termination of the lease the land reverted to the plaintiff, freed from the lessee's estate therein, and the lessee or his assigns had no right thereafter to begin or continue drilling operations. On the other hand, when the lease terminated, the plaintiff as lessor could not compel further performance by the defendants, and in the absence of any provision to that effect could not maintain an action against the defendants for money damages for their breach in failing to drill the remaining wells.

The lease contained no provision indicating that the parties ever intended that the failure of the lessee or his assignees to drill any of the wells within the prescribed time would subject them to the penalty of paying the plaintiff the cost of drilling the remaining wells. To hold with the plaintiff's contention would award him as money damages the cost of drilling the three remaining wells and also return his land, freed from the lease. Such a result was clearly never contemplated by the parties.

In support of his contention that he is entitled to recover money damages from the defendants for their failure to drill the additional wells, the plaintiff cites Lavery v. Mid-Continent Oil Development Co., 62 Okl. 206, 162 P. 737, L.R.A.1917D, 231, decided in 1917, and All-American Oil & Gas Co. v. Connellee, 5 Cir., 3 F.2d 107, decided in 1924. These cases seem to sustain the plaintiff's contention. However, from examination of the decision in the later case of Fogle v. Feazel, supra, and other authorities cited, the court is convinced that under the terms of the lease here in question, and assuming the truth of the allegations of the complaint, the plaintiff is not entitled to maintain the present action for money damages. Therefore, the complaint fails to state a claim upon which relief could be granted.

In view of the court's conclusion that the plaintiff is not entitled to maintain the present action against the defendants for money damages, it is unnecessary to consider other questions raised by the defendants' motion.

For the reasons stated herein the defendants' motion to dismiss the complaint is granted and an order will be entered accordingly. As the granting of defendants' motion to dismiss concludes this case, the defendants may recover court costs. Rule 54(d), Federal Rules of Civil Procedure, 28 U.S.C.A.; 3 Barron and Holtzoff, Federal Practice and Procedure, § 1195, page 23 et seq.