STEED v. PURE OIL CO.

1. MINES AND MINERALS—OIL AND GAS LEASE—RENEWAL—DEFAULT.
   Where so-called oil and gas lease, which was in fact merely
   option, provided for payment of certain sum annually in ad-
   vance for its extension, deposit of same to be made in certain
   bank, failure of check to reach bank on date due resulted in
   default, although check had been mailed, and its failure to
   arrive was due to delay in mail.

2. SAME—DEFAULT—ACCEPTANCE—WAIVER.
   Where, under so-called oil and gas lease, lessee had right to
   deposit payments in bank as they became due, and bank had
   authority from lessors to accept said payments, bank was not
   chargeable with notice as to when they were due, and its
   acceptance of payment two days after it was due does not
   constitute waiver on part of lessors of their rights under said
   agreement.

3. CONTRACTS—OPTIONS—ACCEPTANCE.
   Acceptance of option must be agreeable to terms proposed and to
   exact thing offered, and it must be within time specified or
   right will be lost.

4. MINES AND MINERALS—OIL AND GAS LEASE—EXTENSION—FOR-
   FEITURE.
   Where lessee under so-called oil and gas lease failed to make
   payment payable in advance for its extension on date due, its
   rights thereunder were terminated by notice of its forfeiture
   served on it by lessors.

Appeal from Midland; Hart (Ray), J. Submitted
November 1, 1932. (Docket No. 58, Calendar No.
36,544.) Decided December 6, 1932.

Bill by Adrian L. Steed and another against Pure
Oil Company, an Ohio corporation, to remove cloud
from title by recording a so-called oil and gas lease.

As to time and manner of accepting option, see annotation in 21
L. R. A. 129.

Decree for plaintiffs. Defendant appeals. Affirmed.

*T. R. McNamara,* for plaintiffs.

*Virgil W. McClintic,* for defendant.

Sharpe, J. On October 17, 1927, the plaintiffs as first parties, in consideration of the sum of one dollar, entered into a written agreement, spoken of as an oil and gas lease, with one S. M. Walley as second party, granting to him the oil and gas in and under 140 acres of land in the county of Midland, described therein, on certain specified terms, among which were the following:

"Second party agrees to drill a well upon said premises within 14 days from this date, or thereafter pay to the first party one dollar per acre annually, payable in advance, until said well is drilled or the property hereby granted is conveyed to first party. * * *

"Payments coming due on this grant, except by mutual consent, shall be made by deposit to the credit of Adrian L. Steed in the Isabella County State Bank, of Mt. Pleasant, Michigan."

On October 20, 1927, Walley assigned his interest under this agreement to the defendant, Pure Oil Company. Both instruments were duly recorded in the office of the register of deeds.

Claiming default in the payment due thereunder on October 31, 1930, the plaintiffs mailed a notice of the forfeiture thereof to the defendant on November 5, 1930. On defendant's failure to surrender the so-called lease, the plaintiffs executed the affidavit provided for in Act No. 81, Pub. Acts 1929 (3 Comp. Laws 1929, § 13506), but was prevented from filing

it by a notice given to the register of deeds by defendant.

On February 16, 1931, plaintiffs filed the bill of complaint herein, setting forth the facts as above stated, and praying that said lease (agreement) be declared null and void and its record removed as a cloud upon plaintiffs' title to the land. The defendant in its answer denied that there was any default in the making of the payment and that plaintiffs were entitled to the relief prayed for. Plaintiffs had decree, from which defendant has taken this appeal.

The facts are not in dispute. On Saturday, November 1, 1930, Adrian L. Steed, hereafter spoken of as the plaintiff, went to the Isabella County State Bank and asked for the money which, as he claims, should at that time have been placed to his credit under the terms of the agreement. He was informed that it had not been sent to the bank by the defendant. On Monday, November 3d, he again called at the bank, and was again told that "the November payments hadn't come into the bank yet." Tuesday, November 4th, was an election day. On the next day, he signed the notice of forfeiture above referred to and sent it to the defendant by registered mail.

Defendant submitted proof that a registered letter containing a check to plaintiff for $140 was mailed at Saginaw on October 31st, addressed to the Isabella County State Bank at Mt. Pleasant. This check was not received by the bank until the afternoon of November 3d, and after plaintiff had made inquiry about it. The agreement is dated October 17th. The undertaking was to drill within 14 days from that date or thereafter pay one dollar per acre annually in advance. That there was default is clearly established.

But defendant's counsel contends that under the terms of the agreement the bank was made the agent of plaintiffs to receive the payments, and that as plaintiffs took no steps to declare a forfeiture "prior to acceptance of rental by bank, such attempted forfeiture thereafter is of no force or effect." Under the agreement the defendant might deposit the payments as they became due to the credit of the plaintiffs in the bank, and, if such a deposit had been made by it within the time limited therefor, it would have fully performed on its part. The bank had authority from plaintiffs to accept these payments and credit them therewith. It was not chargeable with notice as to when they were due, and its acceptance of the money on November 3d cannot be held to constitute a waiver on the part of plaintiffs of their rights under the agreement. If the money had been on deposit when it became payable to plaintiffs and the bank had thereafter failed, the loss would have fallen upon them.

Counsel forcibly urges that "it is inequitable to allow forfeiture" under the facts presented. It appears that defendant has developed much of the surrounding territory and thus greatly increased the value of its rights under this agreement, and that, had its check not been delayed in the mails, it would have reached the bank within the time fixed.

The court was not asked to declare a forfeiture. It was asked, if it found that defendant's rights under the agreement had been terminated by the notice of forfeiture, to remove the cloud on plaintiffs' title to their land occasioned by its record.

We again quote from the agreement:

"Second party agrees to drill a well upon said premises within 14 days from this date, or thereafter pay to the first party one dollar per acre annu-

ally, payable in advance, until said well is drilled or the property hereby granted is conveyed to first party.''

In *Concord Oil & Gas Co.* v. *Thompson*, 248 Mich. 230, the undertaking of the plaintiff was couched in quite similar language. It was therein held that the payments were not rentals, but compensation only for delay; that (p. 235):

''Both parties understood that these payments should be made in advance to secure the extension, and there is no injustice in so holding. Plaintiff's rights were conditional on such payments being made in advance. Its failure to do so terminated its rights under the lease.''

It was also held that the agreement was not a lease; that under it ''the obligation was to pay for an option to do a certain thing if exercised within a limited time.''

In *Olson* v. *Sash*, 217 Mich. 604, 606, it was said:

''An option is a mere offer. * * * Compliance with its terms is minutely required. * * * The acceptance must be agreeable to the terms proposed and to the exact thing offered. * * * The acceptance must be within the time specified or the right will be lost.''

See, also, *Bailey* v. *Grover*, 237 Mich. 548.

Construing this agreement as we did the similar one in *Concord Oil & Gas Co.* v. *Thompson, supra,* as an option, it follows that, by defendant's neglect to make payment within the time specified therein, its rights thereunder were terminated by the notice of forfeiture served on it.

The decree is affirmed, with costs to appellees.

CLARK, C. J., and MCDONALD, POTTER, NORTH, FEAD, WIEST, and BUTZEL, JJ., concurred.