## CLOVIS et al. v. CARSON OIL & GAS CO.
### No. 550.

District Court, E. D. Michigan, N. D.
Aug. 28, 1935.

M. B. Decker, of Mt. Pleasant, Mich., for plaintiffs.

Clark & Henry, of Bay City, Mich., and Norris, McPherson, Harrington & Waer, of Grand Rapids, Mich., for defendants.

TUTTLE, District Judge.

This case involves the construction of a so-called oil and gas lease covering certain land in Michigan. The jurisdiction of this court is properly invoked on the ground of diversity of citizenship. The cause is now before the court on a motion by the defendants to dismiss the bill of complaint upon the ground that it appears from the allegations in such bill that, under a proper interpretation of said lease, a copy of which is attached to said bill, the plaintiffs, who are the lessees and assignees of lessees, respectively, thereunder, are not entitled to any of the relief sought.

The rights of the parties hereto, who are also parties to said lease or their assigns, depend upon the construction and effect of such lease and, specifically, of two particular provisions thereof. The first of these provisions is as follows: "If no well be commenced on said land on or before the 15th day of July, 1934, this lease shall terminate as to both parties, unless the lessee shall on or before that date pay or tender to the lessor or to the lessor's credit in the ———— Bank at ————, or its successors, which shall continue as the depository regardless of changes in the ownership of said land, the sum of fifty ($50.00) dollars, which shall operate as a rental and cover the privilege of deferring the commencement of a well for three months from said date. The payment herein referred to may be made in currency, or check at the option of the lessee and the depositing of such currency, draft or check in any post office, with sufficient postage and properly addressed to the lessor, or said bank, on or before said last mentioned date, shall be deemed payment as herein provided. In like manner and upon ———— like payments or tenders, the commencement of a well may be further deferred for like periods of the same number of months successively. And it is understood and agreed that the consideration first recited herein, the down payment covers not only the privilege granted to the date when said first rental is payable as aforesaid, but also the lessee's option of extending that period as aforesaid and any and all other rights conferred."

The other provision just mentioned, which is found almost at the end of the lease and follows, at a considerable distance, the clause already quoted, is as follows: "If the estate of either party hereto is assigned—and the privilege of assigning

in whole or in part is expressly allowed—the covenants hereof shall extend to their heirs, executors, administrators, successors or assigns, but no change in the ownership of the land or assignments of rental or royalties shall be binding on the lessee until after the lessee has been furnished with a written transfer or assignment or a true copy thereof; and it is hereby agreed that in the event this lease shall be assigned as to a part or as to parts of the above described lands and the assignees of such part or parts shall fail or make default in the payment of the proportionate part of the rents due from them, such default shall not operate to defeat or affect this lease insofar as it covers a part or parts of said lands upon which the said lessee or any assignee thereof shall make due payment of said rental, and this lease shall never be forfeited for non-payment of any rental due until after at least ten days written notice by registered mail or in person shall have been given the lessee."

The portion of the last-quoted provision which is here involved is only the final clause thereof, reading as follows: "And this lease shall never be forfeited for non-payment of any rental due until after at least ten days written notice by registered mail or in person shall have been given the lessee."

It appears from the allegations of the bill of complaint, which, for the purposes of this motion to dismiss the bill, must, of course, be accepted as true, that no well was drilled on the premises within the time prescribed therefor in the lease, and that, although what plaintiffs in their said bill refer to as "the delay rental of $50.00 as provided by the terms of said lease" was made once, extending the lease to October 15, 1934, the plaintiffs tendered no further payment until after that date; such subsequent payment not being accepted by the lessors. The plaintiffs, however, rely on the fact, which is undisputed, that the defendant lessors did not give the ten-day notice of forfeiture prescribed by the clause near the end of the lease already quoted. The sole question, therefore, now presented is whether the effect of said forfeiture clause is to modify the term clause which precedes it in the lease and provides that, unless the said well be drilled or the said payment be made, as therein required, "this lease shall terminate as to both parties."

It seems apparent that there is a direct inconsistency and repugnancy between the two clauses of the lease just quoted and that the court cannot give effect to both of them. Under such circumstances, the rule which the Michigan Supreme Court has clearly and positively adopted as the rule applicable to an oil and gas lease covering land in Michigan is that the court will "give pre-eminence to the first of repugnant clauses," and will construe and enforce the term clause unaffected by the language of a later and inconsistent clause of the lease. J. J. Fagan & Co. v. Burns, 247 Mich. 674, 679, 226 N. W. 653, 655, 67 A. L. R. 522. In the case just cited, as in the present case, there was involved an inconsistency between the term clause of such an instrument and another clause appearing later in the lease. In the course of its opinion, the Michigan Supreme Court used the following language, which, in my opinion, is equally applicable here: "By the great weight of authority, the term clause, which is the habendum clause, dominates the period for which the lease shall run. * * * At the expiration of the fixed time, if there is no production to extend it, the lease ends, not by forfeiture, but by its own terms. This distinction has sometimes been lost sight of by courts, with the result of unnecessary conflict. The unanimity of opinion upon the effect of the term clause, among courts which are hopelessly divided on nearly all other phases of the oil and gas law, is a strong inducement to sustain its dominating character, in the interest of certainty and uniformity of construction and security of rights. The question is whether the development clause operates to modify the term clause so as to extend the fixed time without production of oil or gas. * * * It does not purport in words to modify the term clause. It purports merely to designate conditions under which the estate created by the granting clause and held under the habendum clause shall determine. To give it the effect of extending the fixed term would result in the anomaly of the transformation of a covenant by the lessee or condition subsequent upon breach of which an estate already granted may be determined into a grant of a larger estate. * * * In any event, the most that can be said in favor of plaintiff's contention is that the lease is ambiguous. Under the rule, the construction must be in favor of the lessor. Our construction of the lease is that the term clause dominates the time during which the lessee may operate without production; that the fixed time therein stated is not to be extended by mere com-

mencement of a well nor by indirect, ambiguous, and negative language in the development clause; but it may and must, if at all, be extended by direct and affirmative provision therefor. Upon our initiation into this subject of litigation we feel impelled to encourage clarity and certainty in the time provisions of oil and gas leases."

To the same general effect is the decision of the Michigan Supreme Court in Concord Oil & Gas Co. v. Thompson, 248 Mich. 230, 226 N. W. 857.

The rule of property thus laid down by the Michigan Supreme Court will, under principles too well settled and familiar to require the citation of authority, be adopted and followed by this court, in construing, and giving effect to, oil and gas leases covering land in Michigan.

It necessarily results that, on the failure of the plaintiff lessees to drill the well or make the payments prescribed by the term clause of this lease, such lease by the express language of such clause, automatically terminated, notwithstanding the failure of the defendant lessors to give the ten-day notice already mentioned, and the plaintiffs are not entitled to any of the relief here sought by them. The motion to dismiss the bill of complaint must therefore be granted, and an order will be entered accordingly.