**In re P.I.N.E., INC.; f/k/a Presque Isle Niagaran Exploration, Inc., Debtor.**

**Bankruptcy No. NL 82–02432.**

United States Bankruptcy Court,
W.D. Michigan.

May 23, 1985.

Thompson, Zirnhelt, Bowron, Senger & Rosi, P.C., Peter J. Zirnhelt, and Jeffrey L. Green, Traverse City, Mich., for Louis A. Woloszyk and Phyllis Woloszyk.

Willingham, Coté, Hanslovsky, Griffith & Foresman, P.C. Richard E. Winder, East Lansing, Mich., for debtor.

## OIL AND GAS LEASE—ABILITY TO ASSUME OR REJECT

DAVID E. NIMS, Jr., Bankruptcy Judge.

Louis A. Woloszyk and Phyllis Woloszyk have filed a Motion for relief from stay and for other relief. On November 13, 1980, P.I.N.E., Inc., Debtor herein, entered into an oil and gas lease with Louis A. Woloszyk and Phyllis Woloszyk, owners of certain real property in Presque Isle County, Michigan. The lease was recorded November 24, 1980, at the county's register of deeds office. It provided in relevant part as follows:

"2. It is agreed that this lease shall remain in force for a primary term of 5 years from this date and if lessee commence to drill within said primary term or any extension thereof, lessee shall have the right to continue drilling completion with reasonable diligence; said term shall extend as long thereafter as oil and gas, or either of them is or can be produced by lessee from said land or from a communitized unit as hereinafter provided.

\*   \*   \*   \*   \*   \*

4. If no well be commenced on said land on or before the 13th day of November, 1981, this lease shall terminate as to both parties unless lessee shall on or before that date pay or tender to lessor or lessor's credit in the Peoples Bank and Trust Bank at Posen, Michigan 49776 or its successors as lessor's agent, which shall continue as the depository regardless of changes in ownership of said land, the sum of Four Thousand Dollars ($4,000.00) dollars which shall operate as a rental and cover the privilege of deferring the commencement of a well for 12 months from said date. The payment herein referred to may be made in currency, draft, or check at the option of lessee and the depositing of such currency, draft or check in any postoffice, with

sufficient postage and property address to lessor, or said bank, on or before said last mentioned date, shall be deemed payment as herein provided. In like manner and upon like payments or tenders, the commencement of a well may be further deferred for like periods of the same number of months successively during the term of this lease. It is understood and agreed that the consideration first recited herein, the down payment covers not only the privilege granted to the date when said first rental is payable as aforesaid, but also lessee's option of extending that period as aforesaid and any and all other rights conferred."

No drilling of a well has ever been commenced. Debtor made a timely "delay rental" payment of $4,000.00 on or before November 13, 1981.

An involuntary Chapter 7 was filed against Debtor on August 3, 1982, which debtor converted to a Chapter 11 on September 27, 1982. The delay rental which was due by November 13, 1982, was not paid. On March 14, 1983, Debtor filed in the Presque Isle County Register of Deeds office a notice of the bankruptcy proceedings.

In March, 1984, Debtor applied to this court for authority to sell most of its assets, including the subject lease along with several other leasehold interests. An order confirming sale of assets to Richard Bennet was entered on April 2, 1984. According to the terms of the sale, the purchaser was to acquire any interest of the debtor in the property being sold. Debtor was to pay any delay-rental accrued prior to March, 1984, prior to the transfer. In the event that any of the assets, including leases, were unable to be sold, the purchase price was to be reduced accordingly.

After authorization for the sale, Debtor tendered past due delay rentals to all lessors. All except the Wolosyzks accepted the payments. No tender of payments due by November 13, 1982, and November 13, 1983, under Paragraph 4 of the lease was made to the Woloszyks prior to April of 1984, and they at that time refused pay-

ment, claiming that Debtor's leasehold interest had expired pursuant to its terms.

On July 20, 1984, Woloszyks filed a motion requesting that this court declare that lease to have been abandoned, or, in the alternative, to grant relief from stay so as to permit them to commence the forfeiture procedures set forth in Mich.Comp.Laws § 554.281 (Mich.Stat.Ann. § 26.1161 (Callaghan 1982)).

Debtor responded with a counter motion claiming that the lease remains in effect between the parties until the provisions of said section are met and that Debtor has the right to cure its default and assume the lease as an executory contract under 11 U.S.C. § 365. Debtor asks the court to order Woloszyks to accept late delay rentals.

The issues before the court are, first, did the lease expire by its terms; second, the applicability and effect, if any, of Mich. Comp.Laws § 554.281; and third, the impact, if any, of this court's decision in *In re Thompson* 17 Bankr. 748 (Bankr.W.D. Mich.1982) on the rights of the parties.

## I. AUTOMATIC TERMINATION

### A. *Limitations on Debtor's rights under 11 U.S.C. § 365.*

11 U.S.C. § 365 sets forth the rights of a debtor-in-possession or trustee to assume an executory contract upon cure of any default or adequate assurance of prompt cure. Unless the court orders otherwise, a Chapter 11 debtor may assume or reject any time prior to confirmation of a plan; no plan has been confirmed in this case.

However, the law is clear that a contract or lease which has expired prior to the bankruptcy filing leaves the debtor with nothing to assume or reject. See *eg. In re Triangle Laboratories, Inc.* 663 F.2d 463 (3rd Cir.1981); *In re Benrus Watch Co.* 13 B.R. 331 (Bankr.S.D.N.Y.1981); *In re Mimi's of Atlanta, Inc.* 5 B.R. 623, 6 B.C.D. 807 (Bankr.N.D.Ga.1980); *In re Beck* 5 B.R. 169 (Bankr.D.Haw.1980).

Similarly, a lease that expires by its own terms after the filing of the bankruptcy petition leaves nothing to assume or reject. *In re Gloria Manufacturing Corporation* 734 F.2d 1020 (4th Cir.1984). See also *In re Trigg* 630 F.2d 1370, 1374 (10th Cir.1980); and *In re Good Hope Refineries v. Benavides* 602 F.2d 998 (1st Cir.) cert. denied, 444 U.S. 992, 100 S.Ct. 523, 62 L.Ed.2d 421 (1979).

### B. *"Unless" Clause in Oil and Gas Lease.*

It is this court's opinion that the subject lease did expire by its terms on November 13, 1982, upon debtor's failure to make the delay rental payment, and that there is no default to be cured. In reaching this conclusion, it is necessary to consider a distinction, well known to the oil and gas industry, between an "or" lease and an "unless" lease. A concise explanation of the two types of lease is given in 38 AmJur 2d Oil & Gas, § 124 (1968):

"Delay-rental provisions are ordinarily part of a 'drilling clause' that specifies a time, usually much shorter than the so-called 'primary term' of the lease, in which a well is to be commenced or completed in the event that delay rentals, if authorized by the lease, are not paid. * *

"There is a considerable difference in the verbiage by which a delay privilege is granted. The usual 'or' lease requires the lessee, under penalty of a forfeiture, to commence or complete a well at the appointed time or pay the stipulated amount periodically during the term of deferment. The ordinary 'unless' lease provides that a default therein shall terminate the lessee's rights unless on or before the day set there shall be paid the agreed commutation for the period specified, with the payments for like successive periods.

   *     *     *     *     *     *

"Although deferment of exploratory operations is authorized by both the 'or' and the 'unless' provisions, there is a vast distinction between them in respect

to the rights and liabilities of the parties. Under an 'or' lease—one obligating the lessee to drill a well within a certain time 'or' pay delay rentals—the lessee is bound either to drill or to pay delay rentals, and on the lessee's failure to take advantage of any surrender clause that may be included in the lease, he must elect which course he will follow. If the lessee under an 'or' lease does not commence or complete his operations at the appointed time, he becomes liable for the rentals. On a default in the payment of delay rentals, the lessor may waive the default, or bring suit for damages, or proceed to forfeit the lease. The lessee's failure both to drill and to pay does not automatically terminate an 'or' lease; and since any forfeiture provision therein is for the benefit of the lessor alone, he may waive it. On such a waiver, the lessee will not be heard to argue that his own default put an end to the lease and extinguished his obligations.

"Under an 'unless' lease, the lessee is under no duty either to drill or to pay delay rentals. A failure to commence operations at the time specified does not make him liable for the rentals, and no action can be maintained for their recovery. If he either drills or pays the lease remains in effect, but if he elects to do neither, it ipso facto terminates."

See also, *Good Hope Refineries v. Benavides* 602 F.2d 998, 1001 (1st Cir.) cert. denied, 444 U.S. 992, 100 S.Ct. 523, 62 L.Ed.2d 421 (1979); *Williams v. Ware*, 167 Okl. 626, 31 P.2d 567, 569–70 (1934); Annot., 67 ALR 224 (1920); Williams *Oil and Gas Laws* 602.2 (1981).

The effect of an "unless" clause in an oil and gas lease on the parties rights was articulated in the case of *Joyce v. Wyant* 105 F.Supp. 979, (W.D.Mich.1952), aff'd, 202 F.2d 863 (6th Cir.1953). The lease there provided for a "primary term" of only 60 days as follows, "The term of this lease is 60 days from date hereof and as long thereafter as lessee complies with his obligations hereunder and he produces oil, gas or other minerals in paying quantities from the leased premises." Elsewhere the lease provided that consideration for the lease was lessee's obligation to drill four wells during successive 60-day intervals.

Lessee drilled one well, but subsequently failed to drill an additional well during the next 60-day period. At page 983, the district judge compared the above clause to a delay rental clause of the type present in our case, and found the effect to be the same:

"Although there was no provision in this lease for its extension beyond its specified term by the payment of a sum of money in lieu of drilling, the legal effect of the defendants' failure to extend the term by drilling the second well within the prescribed time would be the same as under the more usual form of 'unless' lease where the lessee failed to obtain an extension of the term either by drilling or by paying a sum of money."

In finding that the rights and obligations of both parties had automatically terminated upon lessee's failure to drill within the second 60-day period, the court held at page 986:

"There was no provision in the present lease that if the lessee failed to drill, he would be liable for money damages. It provided in effect that unless the lessee or his assigns drilled the wells within the specified times, the lease term would end, and no notice of termination was necessary. The lease was not forfeited, but by its own provisions its term ended and it automatically terminated when the defendants failed to comply with their obligations thereunder. Upon the termination of the lease the land reverted to the plaintiff, freed from the lessee's estate therein, and the lessee or his assigns had no right thereafter to begin or continue drilling operations. On the other hand, when the lease terminated, the plaintiff as lessor could not compel further performance by the defendants, and in the absence of any provision to that effect could not maintain an action against the defendants for money dam-

ages for their breach in failing to drill the remaining wells."

This decision was affirmed in its entirety by the 6th Circuit in *Joyce v. Wyant* 202 F.2d 863 (1953), which held at 864:

"The 'unless' clause is regarded as a limitation on the lessee's estate or the period of the grant. Unless the lessee performs the additional act, which he is not obligated to perform, the lease automatically terminates at the expiration of the primary grant. Such a lease is distinguished from the so-called 'or' lease where the lessee is obligated either to drill a well or pay rental, and can be held in default upon failure to do so."

The lease in *Joyce v. Wyant, supra,* was executed under Louisiana law. However, although no court in Michigan compared an "unless" lease with an "or" lease until *Joyce,* this court is satisfied that Michigan law does not deviate from that of the other states with respect to the effect of an "unless" lease. 16 ML & P § 23 (1957) sets forth the distinction between "or" and "unless" leases recognized in *Joyce.* Also, the case of *Clovis v. Carson* 11 F.Supp. 797 (E.D.Mich.1935), appeal dismissed, 86 F.2d 995, (6th Cir.1937) involved a Michigan lease and contained a delay-rental, or "term clause" identical to paragraph 4 of the subject lease. A later clause provided that if the lease were assigned, then the lease would never be forfeited for nonpayment until after at least ten days' notice to lessee. Lessee assignees failed to make delay-rental payments by the due date. Lessee's subsequent offer of payment was not accepted by lessors, even though no notice of forfeiture had been given. The court held that the two clauses were inconsistent and repugnant to each other, that the first clause must be enforced over a later inconsistent clause, and at page 799 stated that, "It necessarily results that, on the failure of the plaintiff-lessees to drill the well or make the payments prescribed by the term clause of this lease, such lease by the express language of such clause, automatically terminated, notwithstanding the failure of defendant-lessors to give the 10-day notice already mentioned, and the plaintiffs

are not entitled to any of the relief sought here by them."

Under the subject lease, the lessee shall have five years within which to begin drilling, subject to payment of periodic delay-rentals should drilling not be commenced; thereafter, the lease may continue so long as oil and gas is produced. Debtor's attempt to imply that the lease's "primary term" of five years somehow gives it vested rights for that long, must fall flat. The court in *Williams v. Wares,* 167 Okl. 626, 31 P.2d 567, 569 (1934) discussed a five year lease with an "unless" delay rental provision as follows:

"By the terms of the lease in controversy, the lessee acquired a vested right to explore for oil and gas until September 11, 1929, with an option to renew the term for successive annual periods not exceeding five years from the date of the lease. This lease is, in fact, a lease from year to year, not exceeding five years. The payment of the rental was a necessary condition precedent to the renewal of the lease from year to year as specified in the lease contract. After execution and delivery of the lease, the lessee, so long as the rentals were paid in the manner provided had an option to continue the lease in force, but for not more than five years without drilling a well."

Also, as noted above, the court in *Joyce v. Wyant, supra,* compared the contingency provision before it to the delay-rental contingency being considered here. According to the reasoning in *Joyce,* there are actually two "unless" clauses in this lease, one in paragraph 2, effective after the first five years, and one, paragraph 4, involving the payment of delay rentals, effective for up to five years from the date the lease was signed.

■ Paragraph 4 is by its explicit language an "unless" clause, as was the same clause in *Clovis v. Carson, supra.* In light of *Joyce, Clovis,* and the great weight of authority on the effect of "unless" leases, the subject lease expired as to both parties

on November 13, 1982, when debtor failed to either begin drilling or make payments.

## II. APPLICABILITY AND EFFECT OF MICH.COMP.LAWS § 554.281

Mich.Comp.Laws § 554.281 (Mich.Stat. Ann. § 26.1161 (Callaghan 1982)) provides first that it is lessee's duty to surrender the lease upon a forfeiture, but that if lessee fails to do this, lessor may serve a notice of forfeiture on lessee, declaring that the terms of the lease have been broken and demanding a surrender. Lessee may file an affidavit of forfeiture or may do nothing, and in the latter event, the register of deeds is to file an affidavit of forfeiture. If the lessee claims that the lease has not been forfeited, lessor must proceed with his remedies at law.

It would appear to the court that Mich. Comp.Laws § 554.281, is not even applicable where an "unless" lease is involved. The above is a statutory procedure for forfeitures; as the court in *Joyce v. Wyant*, 105 F.Supp. 979 (W.D.Mich.1952) at page 986 stated, " * * * no notice of termination was necessary. The lease was <u>not</u> <u>forfeited</u> but by its own provisions its term ended and it <u>automatically</u> terminated * * *" (underlining supplied). Similarly, in *Clovis v. Carson* 11 F.Supp. 797 (E.D. Mich.1935) at page 799, the court held that the "unless" lease "automatically terminated, not withstanding failure of the lessors to give the ten day notice already mentioned * * *." That Michigan case, decided more than five years after the above statute came into effect, made no reference to the statute. The court in *Good Hope Refineries, Inc., v. Benavides* 602 F.2d 998, 1001, (1st Cir.1979) cert. denied, 444 U.S. 992, 100 S.Ct. 523, 62 L.Ed.2d 421 (1979) characterized an unless lease as creating a "determinable fee interest in the minerals in place, which interest reverts automatically to the grantor upon failure to drill or pay."

No Michigan cases specifically discuss the applicability or lack thereof, of this statute to an "unless" lease. Debtor points out that in *Steed v. Pure Oil Co.* 260 Mich. 699, 245 N.W. 550 (1940), the court, although not mentioning the statute, held that by lessee's failure to make a timely payment, lessee's rights terminated upon notice of forfeiture. However, the lease there was an "or" lease. There, the lessee had agreed to *either* drill within fourteen days or pay rentals. The reference to "notice of forfeiture" in that case therefore has no bearing here.

In the case of *Williams v. Ware*, 167 Okl. 626, 31 P.2d 567 (1934) where the court determined a delay-rental provision like the one here to be an "unless" clause, it held at 570 that, "We are constrained to hold that the statutory relief afforded against forfeiture has no application."

And finally, in *Joyce v. Wyant, supra*, at 984, the district court, citing 2 Summers Oil & Gas § 452, stated:

" 'Where the "unless" drilling clause is used a failure of the lessee to drill or pay a stipulated sum of money ipso facto terminates the lease without the necessity of re-entry, action, or their equivalents by the lessor.' (See authorities cited.)"

The statute itself, in setting out the form of the notice of forfeiture, refers to cases where "the terms of the lease have been broken * * * *" In an "unless" lease, failure to pay or drill does not constitute a breach of the lease, since lessee had no obligation to pay or drill in the first place. In view of this and the above-cited authorities, I find that Mich.Comp. Laws § 554.281 has no application here.

However, even if it did apply, I cannot find that the requirements set forth in the statute can in any way be read to extend the terms of the lease. If debtor were to have its way, a lessee would have until at least 60 days after the day its rights automatically terminated, here November 13, 1982, to either drill or pay. Such would be inconsistent with all authority on point. There is no "default" to be cured here, but even if there were, the statute makes no provision, sets forth no right to cure a default. To read a right to cure a default into this statute, and fur-

ther, to impose such a right on a lessor of an "unless" lease, would materially alter the terms of the contract as to both parties so as to make the lease an "or" lease.

If the statute were to have any applicability at all to an "unless" lease, its effect would only be to allow the lessee an opportunity to claim that he had, in fact, begun drilling (or made payment) by the specified date, here November 13, 1982. It is this right and only this right that the lessee would continue to hold until final notice of termination is recorded by the register of deeds, and it is only this right, held by virtue of the lease, that finally became null and void; all substantive rights contained in the lease, such as the right to drill, right to assign, as well as the right to make delay-rental payments, expired by the date specified, even under an "or" lease. See *Steed v. Pure Oil, supra,* (Delay rental payments due October 31, 1930; payment deposited in lessor's bank November 3; lessor mailed "notice of forfeiture" on November 5; lessee had no right to cure a default.) Such a reading is required if the statute is to be consistent with the terms bargained for by the parties to the lease and with caselaw construing such leases.

Here debtors admit not to have tendered delay-rental payments until April or May of 1984, and, in any event, any right a lessee would have to argue that it did either drill or pay by the termination date is hardly equivalent to a right to cure a default. In conclusion, Mich.Comp.Laws § 554.281 is probably inapplicable to an "unless" lease. Even if the parties were required to comply with the statute, there is nothing in its provisions which would prevent the lease from expiring by its terms.

## III. RELEVANCY OF IN RE THOMPSON

██ This court's decisions in *In re Thompson*[1] 17 B.R. 748 (Bankr.W.D.Mich. 1982) and *In re Wallace* 33 B.R. 29 (Bankr.

W.D.Mich.1983), relied on by Debtor, are not applicable.

Here, there was no default, because debtor had no contractual duty to make delay-rental payments. As discussed above, Mich.Comp.Laws § 554.281 does nothing to change this fact. On the other hand, under Mich.Comp.Laws § 600.5744 (Mich.Stat.Ann. 270.5744 (Callaghan 1980)) and Mich.Comp.Laws § 600.6062 (Mich. Stat.Ann. 27A.6062 (Callaghan 1977)), the redemption statutes for land contract vendees and mortgagors, debtors have a post-default, post-judgment right to pay the creditor the amount bid at the foreclosure sale and keep the property. A debtor's Chapter 13 or Chapter 11 filing only allows him to extend the period during which that amount must be paid by curing, under a plan, the default which led to the judgment of foreclosure. But here, debtors never had any rights comparable to those bestowed by the redemption statutes. Because of the differences in the relative positions of the lessor and lessee in this case, and those of a mortgagor and mortgagee, the *Thompson* case and its progeny are not controlling and have no bearing on the matter before us.

The case of *Good Hope Refineries v. Benavides* 602 F.2d 998 (1st Cir.) cert. denied, 444 U.S. 992, 100 S.Ct. 523, 62 L.Ed.2d 421 (1979), is particularly on point in this regard. In that case, Debtor held an oil and gas lease subject to an "unless" delay-rental clause. Final date for payment of delay-rentals was November 8, 1975. Debtor tendered a check on October 30, 1975, and filed under Chapter XI on October 31, the next day. Debtor's bank subsequently set off against Debtor's deposits and dishonored the delay-rental check. Debtor tendered a new check on November 18, but it was refused as untimely. The bankruptcy court dismissed Debtor's complaint to establish its rights in

---

**1.** The court's holding in *In re Thompson* has very recently been overruled by the Sixth Circuit in *In re Glenn et ux* 760 F.2d 1428 (6th Cir.1985). This court has not yet decided whether cases filed prior to the date this decision was issued, and in which a debtor has relied on the court's *Thompson* decision, may continue to rely on it. It is for this reason that the court now addresses the issue raised by Debtor's reliance on *Thompson,* in spite of the Sixth Circuit decision.

the lease, on grounds that the lease had expired on November 8, 1975. The district court affirmed, holding that the lease was in existence at the time of filing but that it had automatically terminated upon Debtor's failure to make good tender by November 8, and that nothing in the Bankruptcy Act permitted Debtor to cure this failure. The First Circuit affirmed. In response to Debtor's argument that Section 11e (predecessor of 11 U.S.C. § 108(b)) applied so as to give it 60 days from the date of filing to tender payment, the court analogizing the "unless" clause to an option contract, stated at page 1003,

"The Schokbeton court pointed out that when a trustee exercises his power under section 70(b), 11 U.S.C. § 110(b), to assume an executory contract, the trustee obtains only such contractual rights as the debtor had and assumes all burdens to which the debtor was subject. Id. at 175 (and cases cited therein). If the debtor has committed, or the trustee commits, an incurable breach, the trustee has no continuing rights under the contract. * * * It would be anomalous indeed if section 11(e), a provision dealing mainly with suits and claims by the trustee, could be used to alter, contractual rights substantially where time is of the essence and the debtor or the trustee has defaulted. It would be even more anomalous if, in the case of an option contract, section 11(e) allowed the trustee to procure a right that never existed and for which no consideration has ever been paid, i.e., the right to exercise an option long after its termination date."

It went on to hold,

"Assuming arguendo that the new Act in any way reflects upon the old, we do not think the new section 108(b) helps appellant. When a debtor or a trustee fails to exercise or renew an option by paying the agreed price, there is no contractual 'default' to be cured. The rights that the debtor purchased for the price of the option have merely expired of their own terms. There is no obligation to exercise or extend such an option, and thus no

default when further payment is not made."

Debtor's attempt to compare the situation at bar to either the typical executory lease or a mortgage must fail.

For all of the above reasons, this court finds that Debtors have no rights in the lease to assume. Although the court believes it unnecessary for the Woloszyks to follow the procedures set forth in Mich. Comp.Laws § 554.281, they may wish to do so anyway; their motion for relief from stay is granted, so that they may do what is necessary to regain possession of the property.