## In re REEF PETROLEUM CORPORATION, Debtor.

### Bankruptcy No. NT 83–02437.

United States Bankruptcy Court, W.D. Michigan.

Aug. 15, 1985.

Coulter, Cunningham, Davison, Beeby, Raven & Rogers, Terrence J. Raven, Traverse City, Mich., for debtor.

James and Maudie Rowland, in pro. per.

## OPINION

DAVID E. NIMS, Jr., Bankruptcy Judge.

This matter comes before the court on the objection of debtor, Reef Petroleum Company (Reef), to Claim Number 128 filed by Maudie and James Rowland. The agreed-upon facts are set forth in Reef's brief and are incorporated herein:

"Claimants, James and Maudie Rowland have filed Claim No. 128, contending that they are entitled to payment of $23,-400 pursuant to an Oil and Gas Lease dated May 27, 1982. That lease, * * * provides in pertinent part as follows:

'2. It is agreed that this Lease shall remain in full force for a primary term of five years (5) from this date/September 27, 1982 and if lessee shall commence to drill within said primary term or any extension thereof, lessee shall have the right to continue drilling to completion with reasonable diligence; said term shall extend as long thereafter as oil and gas, or either of them is or can be produced by lessee from said land or from a communitized unit as hereinafter provided. If production obtained during the primary term of this lease shall for any reason cease after the expiration of the primary term, then the term of this lease shall extend for a period of six (6)

months after the date production obtained during the primary term ceased.

\* \* \* \* \* \*

'4. If no well be commenced on said land on or before the 27th day of September, 1983 this lease shall terminate as to both parties, unless the lessee shall on or before that date pay or tender to the lessor or the lessor's credit in the National Bank of Jackson Bank at Jackson, Michigan, or its successors, which shall continue as the depository regardless of changes in ownership of said land, the sum of $7,800 Seventy-eight Hundred and 00/100 Dollars which shall operate as a rental and cover the privilege of deferring the commencement of a well for twelve (12) months from said date.... No default shall be declared however against the lessee by the lessor for failure of the lessee to make any payment or perform any conditions provided for herein unless the lessee shall refuse or neglect to pay or perform the same for ten days after having received written notice by registered mail from the lessor of his intention to declare such default. In like manner and upon like payments or tenders, the commencement of a well may be further deferred for like periods of the same number of months successively. And it is understood and agreed that the consideration first recited herein, the down payment, covers not only the privilege granted to the date which said first rental is payable as aforesaid, but also the lessee's option of extending that period as aforesaid and any and all other rights conferred. The completion of the drilling of one well, whether productive or not productive, shall be and operate as a full consideration for the grant during the remainder of the term of this lease and there are no implied covenants for further development or rentals.'

In addition, lines were drawn through the following clause, thereby deleting it from the lease:

'13. Lessee may at any time surrender this lease as to all or any part of the lands covered thereby, by delivering or mailing a release thereof to the lessor, if lease is not recorded, or by placing a release thereof of record in the proper county, if lease is recorded; and it surrendered only as to a part of said lands, any delay rentals or acreage payments which may thereafter be payable hereunder shall be reduced proportionately.'

An initial payment was made to secure execution of the lease on May 27, 1982. One delay rental payment, pursuant to Paragraph 4 of the lease, was made on September 7, 1983. The lease itself was assigned [as permitted in ¶ 9] by Reef Petroleum to Robert Mosbacher, on September 21, 1984, which assignment was effective as of August 27, 1984. * * * Debtor, Reef Petroleum Corporation contends that no money is due and owing from it to the Rowlands."

It is Reef's position that the lease terminated as to both parties on September 27, 1984, because no delay-rental payment of $7,800 was made to the Rowlands on or before that date. Reef further argues that if there were any remaining obligation under the lease, it would be the obligation of the assignee and not of Reef.

The Rowlands, who are not represented by an attorney, make additional allegations regarding preliminary oral agreements which took place between themselves and representatives of Reef. For purposes of disposition of the objection to claim, the Court will assume that the allegations made by the Rowlands are true.

The Rowlands claim that they had communicated their intent to Reef that the lease be effective for no less than five years and that the lessee be obligated to either drill a well or pay $7,800 per year for that period of time. According to the Rowlands, they objected initially to the inclusion of paragraph 4 of the lease. A representative of Reef then "deleted paragraph 13 as a method of firming the agreement for the full five-year period."

The Rowlands appear to be claiming that if the lease is indeed terminated, then Reef

misled them by falsely representing that the parties would each have vested rights for a full five year period.

The Rowlands concede that the assignment of the lease to Mosbacher was permissible as long as "Mosbacher's obligations were the same as those of Reef at the time of the transfer of ownership." However, it also appears to be the Rowlands' position that the assignment should not have terminated Reef's primary obligation, but that if it did, they were again misled as to the effect of the lease.

In their brief, the Rowlands clarify their claim by alleging that $7,800 is due and owing as of September, 1984, and that additional payments of $7,800 will become due in September of 1985 and 1986.

## I. CONSTRUCTION OF LEASE

Paragraph two and the first sentence of paragraph four of the subject lease are identical to lease terms construed by the Court in its recent opinion in the case of *In re P.I.N.E., Inc.*, 52 B.R. 463 (Bankr.W.D. Mich.1985). In that case the Court discussed the differences between an "or" drilling clause, under which the lessee must either commence the drilling of a well or pay a specified fee, and an "unless" clause, whereby the lessee's leasehold interest terminates unless he either drills or pays a fee by a specified date. The Court determined that the provision in question in *P.I.N.E.* was clearly an "unless" drilling clause; the same wording is used in the first sentence of paragraph four of the subject lease:

"4. If no well be commenced on said land on or before the 27th day of September, 1983 this lease shall terminate as to both parties, unless the lessee shall on or before that date pay or tender to the lessor or the lessor's credit in the National Bank of Jackson Bank at Jackson, Michigan, or its successors, which shall continue as the depository regardless of changes in ownership of said land, the sum of $7,800 Seventy-eight Hundred and 00/100 Dollars which shall operate as a rental and cover the privilege of deferring the commencement of a well for twelve (12) months from said date."

The Court finds that this is also an "unless" drilling clause. In *P.I.N.E., Inc.*, the Court held that the lease had expired by its terms upon lessee's failure to make the delay-rental payment, and further stated as follows:

"Under an 'unless' lease, the lessee is under no duty either to drill or to pay delay rentals. A failure to commence operations at the time specified does not make him liable for the rentals, and no action can be maintained for their recovery. If he either drills or pays the lease remains in effect, but if he elects to do neither, it ipso facto terminates."

Id. at 466, citing 38 Am.Jur.2d Oil & Gas § 124 (1968) and,

"There was no provision in the present lease that if the lessee failed to drill, he would be liable for money damages. It provided in effect that unless the lessee or his assigns drilled the wells within the specified times, the lease term would end, and no notice of termination was necessary. The lease was not forfeited, but by its own provisions its term ended and it automatically terminated when the defendants failed to comply with their obligations thereunder. Upon the termination of the lease the land reverted to the plaintiff, freed from the lessee's estate therein, and the lessee or his assigns had no right thereafter to begin or continue drilling operations. On the other hand, when the lease terminated, the plaintiff as lessor could not compel further performance by the defendants, and in the absence of any provision to that effect could not maintain an action against the defendants for money damages for their breach in failing to drill the remaining wells."

Id. at 466, citing *Joyce v. Wyant*, 105 F.Supp. 979, 986 (W.D.Mich.1952), aff'd 202 F.2d 863 (6th Cir.1953)

The Court notes here that the second sentence in paragraph four, providing that "no default shall be declared ... against the lessee ... for failure to make any payment ... unless the lessee shall ... neglect to pay ... for 10 days after having

received written notice ... from the lessor of his intention to declare default", is inconsistent with the first sentence which provides for automatic termination. The same inconsistent clauses appeared in the lease construed in the case of *Clovis v. Carson* 11 F.Supp. 797 (E.D.Mich.1935), appeal dismissed, 86 F.2d 995 (6th Cir.1937), which case was cited in *P.I.N.E., Inc.*, supra. In *Clovis v. Carson*, the court held that when two clauses are inconsistent, the first clause must be enforced over a later inconsistent clause, and that consequently the lease automatically terminated upon the lessee-assignee's failure to drill or pay, by the express language of the first clause. See also, *Central Jersey Dodge Truck Center v. Sightseer Corp.*, 608 F.2d 1106, 1111 (6th Cir.1979), which stated that under Michigan law, the first of two conflicting clauses or provisions in a contract controls. In light of this principle of construction, the second sentence of paragraph four should be ignored; however, even if it were to be given effect, it would, by its terms, serve only to extend Reef's rights and not its obligations.

■ The court therefore holds, in accordance with its opinion in *P.I.N.E., Inc.* and the authority cited therein, that the lease automatically expired as to both parties when no payment was made to the Rowlands on September 27, 1984. Even if no assignment of the lease had been made, Reef would have had no rights and no obligations under the lease after that day. The deletion of paragraph thirteen has no bearing one way or the other on this result.

## II. *Oral Agreement*

The Rowlands also claim that to the extent the lease failed to obligate Reef to drill or pay rentals for five years it is contrary to the preliminary oral agreement of the parties, and that Reef may be guilty of misrepresentation in inducing them to enter into the written agreement. Even if what the Rowlands allege is true, the Court cannot find that Reef has any contractual obligation to the Rowlands.

■ Under Michigan law, any contract for an interest in lands other than a one-year lease, must be in writing. An exception is made for certain auction sales. Mich.Comp.Laws § 566.108 (Mich.Stat.Ann. 26.908 (Callaghan 1982)) provides in pertinent part:

"Every contract for the leasing for a longer period than one [1] year, or for the sale of any lands, or any interest in lands, shall be void, unless the contract or some note or memorandum thereof be in writing, and signed by the party by whom the lease or sale is to be made, or by some person thereunto by him lawfully authorized in writing."

■ Under the written contract entered into by the parties, what was granted to the lessee was a vested right to explore for oil and gas on the property for one year, with an option to renew at the end of the first and each successive year for five years, and thereafter so long as oil and gas could be produced. Any contrary agreement, regardless of the intentions of either party, would be void under the above-cited statute of frauds.

The case of *Warnes v. Brubaker* 107 Mich. 440, 65 N.W. 276 (1895) is instructive as to the legal effect of a failure to include an oral agreement in a written contract for real estate, particularly where misrepresentation is alleged. In that case, plaintiff had negotiated with defendant to trade certain of his personal property for land owned by the defendant. A written agreement was entered into and the trade was made. Plaintiff later claimed that the land was worth less than represented, and brought an action to recover the difference between the actual value and the value represented by the defendant. Plaintiff based this right to recover on an alleged agreement by defendant during negotiations that if the land were worth less than represented by him, he would pay plaintiff the difference. Plaintiff further claimed that defendant's accomplice drew up the contract and then read it as though it contained the agreement to pay the difference, if any, when in fact the written contract did not include such an agreement. This testimony was excluded at trial. The Michigan

Supreme Court affirmed, and denied plaintiff any right to recover on a preliminary oral agreement. The court held at pages 442–443, 65 N.W. 276:

"The difficulty with this claim is that the oral and the written portions of the transaction are inseparable, in a sense. The negotiations were had, and they culminated in an attempt to put the conclusion in a writing, which should be the contract, by the plaintiff, at least. If that was not the contract, there was none. It may be said that the parties made orally a different contract, but this is not so, for two reasons: First, such contract would have been void under the statute of frauds; and, second, neither of them supposed the contract was made, until put in writing. Plaintiff attacks the writing on the ground that it does not contain his understanding of the bargain, and was procured by fraud, and at the same time insists that the defendant agreed upon another oral contract, where defendant's very fraudulent act shows that he did not intend to make such. Evidently, his mind did not meet the plaintiff's upon the common ground of the oral agreement, and the fact that by subtleness and fraud he made the plaintiff think so does not change the fact, or create a valid oral contract by estoppel, in the face of the statute of frauds and the writing, which conveyed to the plaintiff information that the defendant was relying upon a written contract, and not an oral one.

\* \* \* \* \* \*

In either case he may repudiate the contract, upon discovery of the fraud, or he may affirm the contract. This is a rule so well settled by our own decisions as not to require the citation of authorities."

See also, *Raska v. Farm Bureau Co.* 412 Mich. 355, 314 N.W.2d 440 (1982) where the Michigan Supreme Court held at pages 362–363:

"If a person signs a contract without reading all of it or without understanding it, under some circumstances that person can avoid its obligations on the theory that there was no contract at all for there was no meeting of the minds.

But to allow such a person to bind another to an obligation not covered by the contract as written because the first person thought the other was bound to such an obligation is neither reasonable nor just."

Thus there is no theory under which the Rowlands could rely on their alleged oral agreement with Reef, even if such an oral agreement were proved to have taken place. If the rights of both parties had not already terminated, the Rowlands might have the right to rescind the contract, but that point is now moot, as there is no longer a contract in effect between the Rowlands and Reef or its assignee. The Rowlands were paid the undisputed rental amount of $7,800 per year for those years that Reef had possession of the subject real estate, and there appears to be no disagreement regarding this.

Therefore, because Reef assigned whatever interest it had in the lease, and neither Reef nor its assignee had any obligation to pay additional rentals under the written lease, and because the court cannot permit the Rowlands to rely on any oral agreement they might be able to prove, the Rowlands' claim must be disallowed in its entirety.