# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 16-866
### consolidated with 16-867

## MUKESH R. ZAVERI, ET UX.

## VERSUS

## DENIS LLOYD HUSERS, ET AL.

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NOS. 2006-5675 C/W 2007-1250
HONORABLE DAVID A. RITCHIE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## PHYLLIS M. KEATY
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Phyllis M. Keaty, and John E. Conery, Judges.

**AFFIRMED.**

**Hunter W. Lundy**
**Rudie R. Soileau, Jr.**
**Lundy, Lundy, Soileau & South**
**501 Broad Street**
**Lake Charles, Louisiana 70601**
**(337) 439-0707**
**Counsel for Defendants/Appellees:**
    **Denis Lloyd Husers**
    **Linda Husers**

**E.R. Robinson, III**
**Attorney at Law**
**125 West School Street**
**Lake Charles, Louisiana  70605**
**(337) 433-9535**
**Counsel for Defendants/Appellees:**
**Denis Lloyd Husers**
**Linda Husers**

**Kenneth Michael Wright**
**Kenneth Michael Wright, LLC**
**203 West Clarence Street**
**Lake Charles, Louisiana  70601**
**(337) 439-6930**
**Counsel for Plaintiffs/Appellants:**
**Mukesh R. Zaveri**
**Kailish M. Zaveri**

**James David Cain, Jr.**
**Loftin, Cain & LeBlanc, LLC**
**113 Dr. Michael DeBakey Drive**
**Lake Charles, Louisiana  70601**
**(337) 310-4300**
**Counsel for Third-Party Appellee:**
**City of Lake Charles**

**KEATY, Judge.**

The matter at issue in these consolidated appeals arose after Mukesh and Kailash Zaveri built a large retaining wall between their lot and the neighboring lot of Denis and Linda Husers in conjunction with the Zaveri's construction of a residence on Prien Lake in Lake Charles, Louisiana. Following a bifurcated trial, judgment was rendered in favor of the Husers and against the Zaveris, Champion Custom Home Builders, LLC (Champion), and The City of Lake Charles (the City), in varying amounts. Thereafter, the Zaveris, the Husers, and Champion filed Motions for Judgment Notwithstanding the Verdict (JNOV), all of which were denied. The Zaveris appealed, and the Husers answered that appeal. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY[1]

The Zaveris purchased a partially developed lot at 3608 West Prien Lake Road in October 2005. The prior owners of the lot had built a bulkhead, wharf, and boathouse on the lake, and they had brought in some dirt to create a pad for a home which they intended to build at a later date. The front of the Zaveris' and Husers' lots had elevations of ten feet above sea level at the road and declined to sea level at the lake at the rear of the properties. The Husers have resided in their current house since 1994. Between then and the time the Zaveris purchased their lot in 2005, several hurricanes had struck the Lake Charles area and the Federal Emergency Management Agency (FEMA) required that all new homes be constructed at least ten feet above the base flood elevation.

The Zaveris hired a Texas architect to draw plans to build a house consisting of approximately 8,000 square feet of living area with just less than 12,000 square

---

[1] The following relevant facts are generally uncontested for purposes of this appeal.

feet under the roof. The plans included the creation of a three-sided retaining wall (the wall) which grew in height as it neared the lake to contain the dirt needed to achieve a level surface upon which to build the house. The Zavaris contracted with R-Mac Engineering Company, Inc. (R-Mac), a structural engineering firm based in Texas, to design the foundation and framing of the house, wall, and driveway. Although not licensed as such, Mr. Zaveri (Zaveri) was allowed to act as his own general contractor under a provision of Louisiana law which allows an individual to serve as the builder/contractor for a house he will maintain as a personal residence.[2]

Zaveri submitted site plans and a FEMA Elevation Certificate to the City Planning Department and received a Certificate of Zoning and Land Use Compliance (the zoning certificate) on May 24, 2006. The zoning certificate was issued by Doug Burguires, the City's Director of Planning and Development. By signing the zoning certificate, Zaveri certified that all construction of his residence "will be in strict compliance with all zoning codes and regulations adopted by the City." Building Permit 06-3526 (the permit) was issued to Zaveri on May 24, 2006, and construction began soon thereafter. Throughout the construction project (the project), Zaveri consulted regularly with his close friend, Mike Adalas, a general contractor licensed in Texas with twenty-five-plus years of experience and the principal owner of Champion, a company specializing in the construction of large, custom homes.

The first stage of the project involved construction of a retaining wall which, as originally designed by R-Mac, resembled an upside down T, with "toes" on either side of the vertical wall. By the time construction began, however, Zaveri

---

[2] *See* La.R.S. 37:2170.

had altered the design to remove the toe on the Husers' side of the wall which allowed the wall to be installed closer to the property line. Upon realizing the size and magnitude of the wall, which measured ten feet tall at its highest point near the lake, the Husers contacted the City to express their concerns that the permit was improperly issued because the project violated several of the City's zoning ordinances. In early November 2006, the Husers and the Zaveris met with the City Attorney in an attempt to address the Husers' complaints, to no avail. The Planning and Zoning Commission of the City of Lake Charles (the Commission) also reviewed the Husers' complaints and determined that the Zaveris' permit had been properly issued. Zaveri filed a revised site plan with the City, and while Mr. Burguires issued a second zoning certificate to Zaveri on November 28, 2006, he made the following notation on the Remarks or Special Conditions section of the form: "Revised Site Plan Exceeds Min Building Setbacks."

The Zaveris filed a Petition for Declaratory Relief (the Petition) against the Husers on November 30, 2006, acknowledging that a conflict existed concerning the "appropriateness" of their construction project and requesting that the trial court render judgment "declaring the structure to be built pursuant to the plans to be not in violation of any Code provision or ordinance of the City of Lake Charles, thus allowing a reasonably prompt completion of the construction."

On January 5, 2007, the Husers filed an Answer, Third Party Demand, and Reconventional Demand. In answer to the Petition, the Husers alleged that the Zaveris had committed multiple violations of City codes and ordinances, including those related to setbacks and bufferyards. The Husers submitted that the Zaveris would suffer no hardship and that the need for a retaining wall would be eliminated if the Zaveris minimized the size of their planned front yard from "over 134 feet"

3

to "closer to the 30 foot minimum." The Husers' Third Party Demand named the City and requested a declaratory judgment stating that the Zavaris' permit application sought approval for construction that violated zoning ordinances and thus the permit was violative of zoning ordinances. The Husers sought permanent prohibitory injunctive relief enjoining the City from violating its zoning ordinances "by refusing to withdraw, cancel or revoke" the permit and by "failing to order Zaveris to remove all improvements erected . . . in violation of the Zoning Ordinances." The Husers sought damages against the City for the costs to mitigate their losses, costs to monitor the retaining wall for potential failure, the stigma and loss of value to their property, the loss of a tree, loss of enjoyment of life and property, and past and future mental anguish. Finally, the Husers' Reconventional Demand against the Zavaris sought a declaratory judgment stating that their building permit was improperly issued by the City because the construction and developments made and/or sought to be made on the property were violative of several zoning ordinances.[3] Due to the Zaveris' actions, the Husers sought damages against them identical to those they sought from the City.

Later, in March 2007, the Husers filed a Petition for Certiorari and Review (the Husers Petition) naming as defendants the City, the Commission, and the Zaveris, requesting that the trial court overturn the Commission's denial of the Husers' appeal of the City's decision to issue a zoning certificate and a building permit to the Zaveris. In an Order dated April 25, 2007, the Petitions filed by the Zaveris and the Husers were consolidated by the trial court.

---

[3] The Husers also claimed entitlement to permanent mandatory injunctive relief enjoining the Zavaris from "continuing or completing [all] construction and development" on their property that was in violation of the zoning ordinances and requiring all such construction previously completed to be removed. At trial, counsel for the Husers stated that they were no longer seeking removal of any part of the Zavari construction.

In November 2007, the Husers added Champion as an additional third party defendant. In a supplemental reconventional demand filed in May 2008, the Husers claimed that the Zaveris' construction violated La.Civ.Code art. 667.[4] The Zaveris, the City, and Champion were formally put on notice in a pleading filed by the Husers in October 2014 that the wall was failing, that they were being "forced to mitigate their damages," and that they were seeking damages for "loss of value, psychological injury, and stigma damages to [their] property".

The matter proceeded to trial on September 28, 2015, and after hearing ten days of testimony, the jury returned a verdict finding that the wall was structurally unsound and that both the Zaveris and Champion committed fault that was a legal cause of the wall being structurally unsound. The jury additionally found that the Zaveri project was in violation of the zoning ordinance and that such violation was a legal cause of damages to the Husers. Conversely, the jury found no fault on the part of the Husers in failing to mitigate their damages. The jury apportioned fault amongst the defendants as follows: 1) 93% to the Zaveris, 2) 5% to Champion, and 3) 2% to the City. In addition, the jury determined that the following amounts of money would compensate the Husers for their losses:

| | |
|---|---|
| Loss of Use and Enjoyment of Property | $ -0- |
| Loss of Value of Property/Stigma Damages | $ 125,000.00 |
| Cost of any Past Repair and Remedial Work | $ 8,200.00 |
| Cost of any Future Repair and Remedial Work | $ 400,000.00 |

---

[4] Louisiana Civil Code Article 667 provides, in pertinent part, that while a landowner "may do with his estate whatever he pleases, still he cannot make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him."

| Past Loss of Trees, Plants and Other Landscaping | $ | -0- |
| Future Loss of Trees, Plants and Other Landscaping | $ | 15,000.00 |
| Mental Anguish, Anxiety, Inconvenience And Discomfort | $ | -0- |

The trial court signed a Judgment on April 29, 2016, which incorporated the jury verdict. With regard to the administrative appeal filed by the Husers alleging that the Commission erred in not overturning the City's decision to issue a zoning certificate and a building permit to the Zaveris, the trial court entered judgment in favor of the Husers and against the Zaveris, Champion, and the City. Judgment was rendered in favor of the Husers and against each defendant in dollar amounts corresponding to the damages each owed according to the percentage of fault assigned to each by the jury. The defendants were also cast with court costs and expert fees totaling $25,198.41 to be paid in accordance with the jury's fault apportionment. Motions for JNOV were filed by the Zaveris, the Husers, and Champion, all of which were denied following a hearing by Order dated August 12, 2016. Thereafter, the Zaveris filed an appeal, which the Husers answered.

## ASSIGNMENTS OF ERROR

In their appeal, the Zaveris assert that the trial court committed legal error: 1) in allowing the Husers any award of damages based upon the evidence presented; 2) in denying their motion for JNOV addressing the award of stigma damages and in awarding special damages in excess of the evidence offered in support of those damages; 3) in its award of expert fees and costs; and 4) in granting the Husers' administrative appeal of the decision of the Commission.

The Husers' answer to appeal seeks to have this court award damages in their favor for the loss of use and enjoyment of their property and for the mental anguish, anxiety, inconvenience, and discomfort that they allegedly suffered, thereby reversing the trial court's denial of their motion for JNOV. They also request that this court order the Zaveris to pay the costs incurred in both courts.

## DISCUSSION

The Louisiana Supreme Court set out the general appellate standard of review in *Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989) (some citations omitted):

> It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. *Arceneaux v. Domingue,* 365 So.2d 1330, 1333 (La.1978); *Canter v. Koehring,* 283 So.2d 716, 724 (La.1973). The appellate review of fact is not completed by reading only so much of the record as will reveal a reasonable factual basis for the finding in the trial court, but if the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong.

The supreme court later explained the concept of damages in *Wainwright v. Fontenot*, 00-492, pp. 5-6 (La. 10/17/00), 774 So.2d 70, 74, as follows:

> The term "damages" refers to "pecuniary compensation, recompense, or satisfaction for an injury sustained." *Fogle v. Feazel,* 201 La. 899, 10 So.2d 695, 698 (1942). The most common type of damages in the delictual context is compensatory damages, which encompasses those damages "designed to place the plaintiff in the position in which he would have been if the tort had not been committed." Frank L. Maraist & Thomas C. Galligan, Jr., LOUISIANA TORT LAW § 7-1 (Michie 1996) (footnotes omitted).
>
> Compensatory damages are further divided into the broad categories of special damages and general damages. "Special damages are those which either must be specially pled or have a

'ready market value,' i.e., the amount of the damages supposedly can be determined with relative certainty." *Id.* § 7-2 (footnotes omitted). Included under the heading of special damages are the plaintiff's medical expenses incurred as a result of the tort. 1 DAMAGES IN TORT ACTIONS § 3.02[2][c][i] (Matthew Bender 2000). On the other hand, "[g]eneral damages are those which are inherently speculative in nature and cannot be fixed with mathematical certainty. These include pain and suffering[.]" Maraist & Galligan, *supra,* § 7-2.

Louisiana Civil Code Article 2324.1 directs that a jury is given "much discretion" in assessing damages.

## I. The Zaveris' Appeal

### *A. Damages*

In their first assigned error, the Zaveris contend that the trial court committed legal error in allowing the jury to make any award of damages to the Husers because such award was not supported by the evidence. They insist that the Husers neither proved that the wall had failed or will fail in the future nor that the Zaveris knew or should have known that the wall would cause damages to the Husers. Pointing to the trial testimony of Charles Norman, the Husers' expert in civil and structural engineering, the Zaveris submit that, even under the best case scenario, the evidence shows that the wall has moved no more than one-quarter of an inch in the ten years since it was built.

As a preliminary matter, the Husers challenge the assumption made in the Zaveris' appellant brief that this case is "different from a regular tort case" such that they can only be found liable under La.Civ.Code arts. 667-68. The Husers argue that Zaveri subjected himself to additional liability in choosing to act as his own general contractor to, in his words, save the "extra 20%" that it would cost to hire a licensed general contractor. As to the merits of this alleged error, the Husers counter that they did, indeed, produce compelling evidence showing that the wall

has failed and will continue to fail. They argue that the Zaveris ignored the totality of Mr. Norman's opinion, which is that the wall is "cracked and it has bowed and it's tilted and it's failing and it will continue to fail, and we have a long time to go between now and the life of this home and I think it has to be remediated." Next, they claim that the Zaveris overlook the testimony of Ralph Lewing, a licensed general contractor whom the trial court accepted in the field of construction, who testified that, after having visited the Husers' property, "he called Charles Norman and told him they got a big problem over there." Mr. Lewing explained at trial that "as I moved along the wall I could see some deterioration, I could see cracks in the wall, I could see where water was leaching through the wall and you can see rust stains, which is never a good sign," and which led him to believe that there was "a problem that's deeper than just the surface." The Husers refer this court to Mr. Lewing's impression that the wall concerned him not only as a general contractor, but also in terms of it presenting "a life safety issue" that could "endanger and impede people's lives." Finally, the Husers point to the testimony of Rod McCasland, the owner of R-Mac, who on cross-examination in response to being shown a photograph marked as Husers Exhibit 20 that depicted the wall's stem and footing as seen from the Husers' property, stated, "It gives me pause. And very frankly, if it were my wall, I would not be very happy."

We agree with the Husers' argument that the Zaveris were subject to liability beyond that imposed by La.Civ.Code arts. 667-68. At the close of the presentation of evidence, the trial court instructed the jury on the law that applied to this case. The jury was first told that this was a tort case and that the Husers claimed they suffered damages to themselves and/or their property, that the defendants were at fault in causing those damages, and that they should be awarded money to

9

compensate them for their damages. The trial court explained that the Husers accused the Zaveris of acting negligently because their conduct fell below "the degree of care that we might reasonably expect from an ordinarily prudent person under the same or similar circumstances." The jury was told that the Zaveris could be liable to the Husers under: 1) La.Civ.Code art. 2322 regarding damages owed by the owner of a building caused by its ruin; 2) La.Civ.Code arts. 667-69 regarding "the corresponding rights and obligations of neighboring property owners; and 3) La.Civ.Code art. 670 regarding damages owed "when a landowner constructs in good faith a building that encroaches on an adjacent estate." In addition, the jury was instructed that "[a] contractor owes third parties a duty to exercise reasonable care." Twice, the trial court read La.Civ.Code art. 2315(A) to the jury, which provides that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."

After having reviewed the evidence presented, we cannot say that the jury manifestly erred or was clearly wrong in finding that the wall was structurally unsound due, in major part, to the fault of the Zaveris such that they owed damages to the Husers. Moreover, Mr. Norman testified that in order to remediate the effects of the wall's current failure and its potential for future catastrophic failure, a buttress wall would have to be constructed, which in September 2014, would have cost $340,040.00 but would now cost more due to increased prices of, among other things, cement and labor. Mr. Norman also estimated that the Husers would have to vacate their home for one to two months during the remediation process. The Zaveris' first assigned error lacks merit.

### B. JNOV/Stigma Damages

The Zaveris next contend that the trial court erred in denying their motion for JNOV regarding the jury's award of stigma damages and special damages that exceeded the evidence offered by the Husers in support of those damages. They submit that because the Husers judicially confessed at trial that stigma damages were special damages, they had the burden of proving to a degree of certainty the amount of stigma damages owed to them. In that regard, the Zaveris argue that the Husers failed to offer such proof. They submit that the Husers' expert real estate appraiser, Rodolfo Aguilar, testified that while it was possible to calculate the value of stigma damages, or diminished value, and while he was of the opinion that the Husers did incur some stigma damages, he was not asked to calculate any such damages to their home. They also submit that Gary Alvarez, who was also qualified as an expert real estate appraiser, testified that stigma damages are quantifiable but it takes much effort to measure such damages. The Zaveris further note that while Mr. Alvarez did appraise the Husers' property, he was not asked to determine the amount of stigma damages suffered by the Husers in this case. Because the Husers failed to provide any specific testimony to support their claim for stigma damages, the Zaveris ask this court to strike the entire $125,000.00 jury award for stigma damages. Additionally, in the event this court chooses to affirm the jury's award for the cost of future repairs, the Zaveris submit that there is no evidentiary support for an award in excess of the $340,040.00 that Mr. Norman estimated as the total cost of the remedial plan that he recommended to the Husers.

The Husers counter that the $125,000.00 awarded to them by the jury was not limited to stigma damages but also included any loss of property value that they suffered. They submit that the competing experts who appraised their

property all agreed that the issues presented by the wall would have to be disclosed to any potential buyer of their home. They submit that their claim for stigma damages differs greatly from the typical claim for such damages in that the adverse impact attached to their property by the wall will remain indefinitely and cannot be removed. The Husers further submit that because they offered specific evidence of the appraised values of their home and of their land absent any improvements, the jury had a concrete basis or range of values from which to fix this element of damages. Finally, they claim that the amount awarded them for the loss of their property value is reasonable and adequately supported by the evidence.

In *Joseph v. Broussard Rice Mill, Inc.*, 00-628, pp. 4-5 (La. 10/30/00), 772 So.2d 94, 99, the Louisiana Supreme Court stated:

> [Louisiana Code of Civil Procedure Article] 1811 controls the use of JNOV. Although the article does not specify the grounds on which a trial judge may grant a JNOV, in *Scott v. Hospital Serv. Dist. No. 1,* 496 So.2d 270 (La.1986), we set forth the criteria used in determining when a JNOV is proper. As enunciated in *Scott,* a JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the trial court believes that reasonable persons could not arrive at a contrary verdict. The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable persons could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. The motion should be denied if there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions. *Scott,* 496 So.2d at 274. In making this determination, the trial court should not evaluate the credibility of the witnesses, and all reasonable inferences or factual questions should be resolved in favor of the non-moving party. *Anderson v. New Orleans Pub. Serv., Inc.,* 583 So.2d 829, 832 (La.1991). This rigorous standard is based upon the principle that "[w]hen there is a jury, the jury is the trier of fact." *Scott,* 496 So.2d at 273; *Jinks v. Wright,* 520 So.2d 792, 794 (La.App. 3 Cir.1987).

The *Joseph* court then discussed the appellate standard of review relative to JNOVs:

In reviewing a JNOV, the appellate court must first determine if the trial judge erred in granting the JNOV. This is done by using the aforementioned criteria just as the trial judge does in deciding whether to grant the motion or not, i.e. do the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable persons could not arrive at a contrary verdict? If the answer to that question is in the affirmative, then the trial judge was correct in granting the motion. If, however, reasonable persons in the exercise of impartial judgment might reach a different conclusion, then it was error to grant the motion and the jury verdict should be reinstated.

*Id.* "The manifest error standard of review applies to the grant and/or denial of a motion for JNOV on the issue of damages as well as on the issue of liability." *Darbone v. State*, 01-1196, p. 12 (La.App. 3 Cir. 2/6/02), 815 So.2d 943, 952, *writ denied,* 02-0732 (La. 5/31/02), 817 So.2d 94.

In denying the motions for JNOV, the trial court stated (alterations ours):

[L]et me just mention the standard for a moment as to all of these. . . . [I]n order for me to change any of these, I have to show that no reasonable jury could have come up with that figure; and that's the nutshell version of what the standard is. And I find that to be a very high standard.

Now, look, I have seen the Court of Appeal in the past make - - increase awards or decrease awards or put awards there that weren't there before. . . . So, I think the Court of Appeal probably would be in a better position having the entire transcript, as well as their vast knowledge of the appropriate awards given in certain cases across the state, especially across the Third Circuit and, you know, what reasonable minimum and maximum awards are for certain things. . . .

. . . [S]ince the Court of Appeal is going to be looking at this and they have the same standard as I have[,] I'm going to deny the motion for JNOV across the board on all three because . . . I'm not allowed to substitute what I think for that of the jury.

In this case, the jury heard competing evidence as to whether the Husers suffered any loss of property value and/or stigma damages as a result of the structurally unsound wall constructed by the Zaveris. The jury was also presented with several appraisals regarding the value of the Husers' home. In a report dated

February 9, 2015, Mr. Aguilar appraised the Husers' home at $603,000.00; however, he noted that such value did not take into consideration the Zaveri house and wall. Mr. Aguilar noted that a willing buyer would subtract the $400,000.00 remediation cost from the price she would otherwise pay to purchase the Husers' home. Mr. Alvarez also appraised the Husers' home on behalf of the Zaveris. He testified that the land itself had a value of $324,000.00, and that the entire property with improvements had a value of $605,000.00. For purposes of his appraisal, Mr. Alvarez made the assumption that the Zaveris' wall was properly constructed and, thus, had no adverse impact on the potential value of the Husers' property. Finally, because the jury determined that the wall is structurally unsound, the unanimous opinion of the appraisers who testified stated the Husers' property value will be negatively impacted and the fact of the wall's lack of structural integrity will have to be disclosed to any potential buyer.

Taking into consideration the totality of the evidence offered in support of and against this element of damages claimed by the Husers, we cannot say that a reasonable juror could not have determined that the Husers proved their entitlement to $125,000.00 in damages for the stigma and lost property value suffered at the hands of the Zaveris. Accordingly, we cannot say that the trial court committed manifest error in denying the Zaveris' motion for JNOV. The Zaveris' second assigned error is meritless.

### C. Expert Fees and Costs

Several weeks after the jury verdict was rendered in their favor, the Husers filed a Motion to Assess Costs and Fix Expert Fees (motion for costs), which was accompanied by bills and/or invoices detailing the amounts of costs and fees which they paid in conjunction with the presentation of their case. That motion was

14

opposed by Champion, the City, and the Zaveris. Following a hearing in January 2016, at which it heard arguments from counsel representing the Husers and all of the defendants cast in judgment, the trial court took the matter under advisement. For oral reasons dictated in open court on February 26, 2016, and reduced to writing in the April 29, 2016 judgment, the Husers were awarded $25,198.41 in total court costs, according to the following breakdown:

|   |   |   |
|---|---|---|
| a. | Fed Ex/Kinkos | $ 203.68 |
| b. | Doug Douget Legal Technology | $ 105.00 |
| c. | Elite Litigation Services,LLC | $ 304.43 |
| d. | Rodolfo J. Aguilar | $ 16,500.00 |
| e. | James Knapp | $ 1,550.00 |
| f. | Ralph Lewing | $ 930.00 |
| g. | Charles Norman | $ 5,605.30 |

In their third assigned error, the Zaveris complain that the trial court abused its discretion in its award of costs and fees to the Husers with the exception of the $105.00 awarded to them for the services provided by Doug Douget Legal Technology. The Husers counter that information provided to the trial court and the jury in this case was vital to their understanding of the complexities related to the city zoning ordinances and the process of building permitting, the structural deficiencies in the wall, and the diminished value of the property caused by the faulty wall. Moreover, the Husers submit that all of the amounts awarded to them as court costs were reasonable and well within the great discretion afforded to the trial court.

Louisiana Code of Civil Procedure Article 1920 provides as follows:

Unless the judgment provides otherwise, costs shall be paid by the party cast, and may be taxed by a rule to show cause.

Except as otherwise provided by law, the court may render judgment for costs or any part thereof, against any party, as it may consider equitable.

With regard to the compensation of expert witnesses, La.R.S. 13:3666(A) provides:

Witnesses called to testify in court only to an opinion founded on special study or experience in any branch of science, or to make scientific or profession examination, and to state the results thereof, shall receive additional compensations, to be fixed by the court, with reference to the value of time employed and the degree of learning or skill required.

"The trial court, in taxing court costs, is given great discretion and may assess those costs in any manner it deems equitable. La.Code Civ.P. art. 1920. The standard of reviewing assessment of court costs is abuse of discretion." *Bentley v. Fanguy*, 09-822, 09-1509, p. 10 (La.App. 3 Cir. 10/6/10), 48 So.3d 381, 389, *writ denied,* 10-2854 (La. 2/25/11), 58 So.3d 457.

In *McKoin v. Harper,* 37,984, pp. 3-4 (La.App. 2 Cir. 12/10/03), 862 So.2d 410, 412-13 (citations omitted), the second circuit directed that:

Witnesses called to testify as expert witnesses shall be compensated for their services, with the amount to be determined by the court and taxed as costs to be paid by the party cast in judgment. An expert witness is entitled to reasonable compensation for his court appearance and for his preparatory work. The trial judge is not required to set an expert fee at the amount charged by the expert witness and has great discretion in awarding and fixing costs and expert fees. However, a trial court's assessment of costs can be reversed by an appellate court upon a showing of abuse of discretion.

Factors to be considered by the trial judge in setting an expert witness fee include time spent testifying, time spent in preparatory work for trial, time spent away from regular duties while waiting to testify, the extent and nature of the work performed, and the knowledge, attainments and skill of the expert. Additional considerations include helpfulness of the expert's report and testimony to the trial court, the amount in controversy, the complexity of the problem addressed by the expert, and awards to experts in similar cases.

In this matter, the Husers were awarded the full amounts sought with regard to the bills they incurred from Fed Ex/Kinkos, Doug Douget Legal Technology, and Elite Litigation Services, LLC.  The trial court awarded the Husers $16,500.00 of the $22,300.00, or 76% of the amount they sought, in conjunction with the services provided by Mr. Aguilar, their expert appraiser.  After cutting the fee charged by expert land surveyor Mr. Knapp by 25%, the Husers were awarded $1,500.00 for his services.  The trial court discounted the $1,550.00 fee sought by the Husers regarding Mr. Lewing, their expert general contractor, to a total of $930.00.  Finally, the Husers were awarded $5,605.30 for the services rendered by Mr. Norman, their expert in the fields of civil and structural engineering.

After review, we find no abuse of discretion in any of the fees/costs assessed against the defendants in this matter.  The parties filed memorandums in support of and against the Husers' motion for costs in advance of the January 2016 hearing, they were allowed to present oral arguments at that hearing, and, although none of the parties took advantage of it, the parties were also given over a week to submit additional information to the trial court after it took the matter under advisement. It is clearly evident from the February 26, 2016 transcript that the trial court was aware of the law regarding the assessment of expert fees and costs and that it gave serious consideration to the amounts that should be awarded given the complicated issues presented and the positive outcome that the Husers obtained in this case. Thus, there is no merit to the Zaveris' third assignment of error.

### D. Administrative Appeal of the Zoning Commission

In their fourth assignment of error, the Zaveris contend that the trial court erred in granting the Husers' administrative appeal of the Commission's decision

to deny their appeal of the City's issuance of a zoning certificate and a building permit to the Zaveris. In their appellate brief, the Zaveris note that the trial court failed to provide written reasons for judgment despite their March 11, 2016 request that it do so. Citing *City of Baton Rouge/Parish of East Baton Rouge v. Myers*, 13-2011, 13-2036 (La. 5/7/14), 145 So.3d 320, the Zaveris then conclude that the trial court's grant of the administrative appeal should be reversed because it failed to offer any written or oral reasons in support of its decision.

The Husers counter that this issue is not properly before our court because their administrative appeal targeted only the City and because their claims against the City were resolved following the jury's verdict and the trial court's resolution of all post-trial motions. The Husers further contend that their claims against the Zaveris and the jury's verdict concerning those claims are not dependent upon the permitting issue. Accordingly, they submit that any and all issues related to their administrative appeal are moot and that the Zaveris have no standing to challenge those issues on appeal.

The Husers' administrative appeal of the Commission's decision to issue a building permit to the Zaveris was not submitted to the jury but was instead decided by the trial court at a February 26, 2016 hearing. According to the transcript of that hearing, the trial court stated that it had previously discussed the administrative appeal during a July 30, 2013 hearing wherein it denied a motion for summary judgment filed by the City. Referring to that earlier hearing, the trial court noted:

> I set forth my reasons and I went through the various definitions and requirements that are set forth in the zoning ordinance with regard to setbacks, structures, accessory structures, etcetera, that were involved in this case and that would have applied to the permit issue to the Zaveris and whether the Zaveries [sic] should have sought a variance

18

as opposed to - - in order to get permission to do what they did as opposed to the City just outright giving them a permit.

So looking back at my previous ruling[,] I'm not going to go through everything that I said . . . .

The trial court then issued the following oral ruling:

I do find that the City - - that the issuance of the - - that the Zaveri home does violate the zoning ordinance of the City of Lake Charles, that the planning director did not have the authority to issue the certificate of zoning compliance and that this matter should have been put forth as a variance request, and there should have been a public hearing to allow the Husers to property [sic] object and that didn't happen. So I do find that the City violated the ordinance and should not have issued the permit.

In *Myers,* the supreme court stated that "[i]t is only when an action of a zoning commission is found on judicial review to be palpably unreasonable, arbitrary, an abuse of discretion, or an unreasonable exercise of police power that such action will be disturbed." *Id.* at 327-28. Despite the fact that the trial court directly referred to the July 30, 2013 hearing wherein it gave its rationale for granting the Husers' administrative appeal when it made its February 26, 2016 ruling, the transcript from the July 30, 2013 hearing does not appear in the appeal record. The Zaveris have not alleged that they were unable to secure a copy of the July 30, 2013 transcript. We, therefore, conclude that the trial court was under no obligation to provide additional reasons when reasons had previously been stated on the record. Moreover, we hold that because the jury determined that the Zaveri project violated the zoning ordinance, that such violation caused damages to the Husers, and that the City was 2% at fault for causing the Husers' damages, the trial court's ruling on the administrative ruling is moot and need not be addressed in this appeal. Thus, there is no merit to the Zaveris final assigned error.

19

## II. The Husers' Answer to Appeal

In their answer to the Zaveris' appeal, the Husers assert that the jury erred as a matter of law in failing to award them any amounts for "Loss of Use and Enjoyment of Property" and for "Mental Anguish, Anxiety, Inconvenience and Discomfort," both of which they categorize as general damages. The Husers further contend that the trial court erred in denying their motion for JNOV regarding those items of damages. The Husers submit that they proved that the Zaveris' conduct deprived them of the sense of peace that all citizens should be able to experience while at their home. As a result, they request that this court award them $50,000.00 each for loss of use and enjoyment of their property and $75,000.00 each for anxiety, inconvenience, and mental anguish.

Mr. Husers explained that the wall began leaking at least by 2008 and that the water that seeps from under the wall keeps that side of his yard constantly wet. He testified that during the construction of the wall, they lost a fence and some plants that were on the property line between their home and the Zaveris' home. Mr. Husers stated that in order to hide the wall and give them some privacy, they had some bamboo planted on their side of the wall.[5] Out of concern for his grandchildren's safety, Mr. Husers stated that he moved their swing set to the opposite side of their backyard. He added that he and his wife plan to remain at their home and raise their grandchildren there. Finally, Mr. Husers stated although he originally sought to force the Zaveris to remove their home, he abandoned that plan because he could not afford the bond necessary for the issuance of an injunction.

---

[5] Despite having dismissed the Husers' invasion of privacy claims before trial, the trial court allowed this testimony as it was relevant to the Husers' general damages claim.

Mrs. Husers testified that after the wall went up, the azalea and jasmine plants along their side of the wall were reduced to twigs. She explained that she has experienced almost constant stress since the project began and that she still experiences sleepless nights and disbelief when she sees the enormity of the Zaveris' home's height compared to her property. Mrs. Husers further testified that she and her husband had endured multiple legal proceedings since the Zaveris bought the property next door to them and that the ordeal would not end at the conclusion of this trial.

Mr. and Mrs. Husers point out that they both testified to having suffered fear, anxiety, and inconvenience during the construction of the wall and since its completion. Finally, they both also stated that, regardless of the outcome of this litigation, they feel they have no choice but to complete the remediation work suggested by Mr. Norman.

The Zaveris counter that neither Mr. nor Mrs. Husers sought any psychological treatment for depression or any emotional injury caused by the project and that Mrs. Husers testified that the project did not deprive her from using her home, garage, or boat house. The jury heard the testimony of Mr. and Mrs. Huser and had the discretion to award additional damages for mental anguish, but chose not to do so. Such an award is largely within the much discretion accorded to the jury.

> In Louisiana, an award for mental anguish resulting from property damage is permissible in limited situations: (1) when property is damaged by an intentional or illegal act; (2) when property is damaged by acts for which the tortfeasor will be strictly or absolutely liable; (3) when property is damaged by acts constituting a continuing nuisance; or (4) when property is damaged when the owner is either present or nearby and suffered a psychic trauma as a direct result.

*Holzenthal v. Sewerage & Water Bd. of New Orleans*, 06-796, p. 39 (La.App. 4 Cir. 1/10/07), 950 So.2d 55, 79, *writ denied,* 07-294 (La. 3/30/07), 953 So.2d 71. "[T]he mental anguish must be a real mental injury. The usual worry over consequences of property damage will not justify an award for mental anguish damages." *Moss v. Town of Rayville*, 50,189, p. 4 (La.App. 2 Cir. 11/18/15), 181 So.3d 809, 813. Nevertheless, "[t]here is no requirement that medical or psychiatric treatment be sought for mental anguish or emotional distress to occur." *Sierra v. Am. Alt. Ins. Corp.*, 13-1808, p. 7 (La.App. 1 Cir. 6/18/14), 147 So.3d 1125, 1130.

In *Wainwright*, 774 So.2d at 74, upon consideration of the res nova situation of where "a jury has determined that the defendant is both legally at fault for the plaintiff's injuries and liable to him for his medical expenses incurred, yet has declined to make any award at all for general damages, *i.e.,* pain and suffering," the Louisiana Supreme Court stated:

> [A] jury, in the exercise of its discretion as factfinder, can reasonably reach the conclusion that a plaintiff has proven his entitlement to recovery of certain medical costs, yet failed to prove that he endured compensable pain and suffering as a result of defendant's fault. It may often be the case that such a verdict may not withstand review under the abuse of discretion standard. However, it would be inconsistent with the great deference afforded the factfinder by this court and our jurisprudence to state that, as a matter of law, such a verdict must always be erroneous. Rather, a reviewing court faced with a verdict such as the one before us must ask whether the jury's determination that plaintiff is entitled to certain medical expenses but not to general damages is so inconsistent as to constitute an abuse of discretion. Only after the reviewing court determines that the factfinder has abused its much discretion can that court conduct a *de novo* review of the record.

*Id.* at 76.

In considering the Husers' motion for JNOV, the trial court remarked:

> [T]here was testimony with regard to the loss of their enjoyment of their property; but, as Mr. Wright said he asked, hey, were you able to use this - - this is loss of use and enjoyment of the property. It's not "use or enjoyment." It says "use and enjoyment." . . . Mr. Wright pointed out that they [] didn't lose use of the property necessarily; but it was clearly shown that they lost enjoyment of the property. So, I don' know. I'm not sure how that is actually supposed to be looked at; and I haven't been provided with anything to help guide me on that. The only other issue is the mental anguish, anxiety inconvenience, and discomfort. . . . I don't think the law requires a mental health professional to come in and testify that they suffered mental anguish and anxiety, inconvenience.

After articulating the grounds upon which a JNOV should be granted, the trial court noted that it found Mr. and Mrs. Husers to be credible witnesses who provided clear testimony that they lost enjoyment of their property as a result of the Zaveri project. It also expressed its surprise at the jury's failure to award the Husers any general damages given the items and amounts of special damages awarded to them. On the other hand, the trial judge recognized that he was not in the jury deliberation room and that the jury "may have made some good points" as to why they failed to award the Husers any damages for mental anguish, anxiety, inconvenience, and discomfort. Ultimately, the trial court denied the Husers' motion for JNOV and refused to reverse the jury's finding that they suffered no general damages.

The trial court applied the proper standard when considering the motions for JNOV filed in this case. Given the great discretion afforded a jury in assessing damages, coupled with the prohibition that we refrain from reweighing the evidence or making credibility determinations, we find no manifest error in the trial court's denial of the Husers' motion for JNOV.

23

**DECREE**

For the forgoing reasons, the April 29, 2016 judgment of the trial court in favor of Denis and Linda Husers against Mukesh and Kailash Zaveri, Champion Custom Home Builders, LLC, and The City of Lake Charles (the City) is affirmed in all respects. The August 12, 2016 order denying the Motions for Judgment Notwithstanding the Verdict filed by Mukesh and Kailash Zaveri and by Denis and Linda Husers is also affirmed. The answer to appeal filed by Denis and Linda Husers is denied. All costs of this appeal are assessed against Mukesh and Kailash Zaveri.

**AFFIRMED.**